373 So.2d 601 (1979)
Jerry D. KIRK, Plaintiff-Appellee,
v.
TOWN OF WESTLAKE et al., Defendants-Appellants.
No. 7070.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
Rehearing Denied August 15, 1979.
*602 John L. Van Norman, III, Lake Charles, for defendants-appellants.
Jerry D. Kirk and Michael Maneille, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
DOMENGEAUX, Judge.
In this suit, plaintiff seeks a writ of mandamus in order to compel the Town of Westlake, Louisiana, through its Mayor and Board of Aldermen, to change the zoning classification of his property.
Plaintiff owns a 7.4 acre tract of land in the Town of Westlake, Louisiana, the majority of which is currently zoned R-M, Multi-Family Residential, and a portion of which is zoned R-1, Single Family Residential. On January 3, 1978, he petitioned the Westlake Zoning Commission to rezone his land to a new classification, T-1, Mobile Home Park "A," in order to construct a mobile home park. On February 7, 1978, after a public hearing on the matter, the Zoning Commission for Westlake submitted its report to the Mayor and Board of Aldermen, recommending that the proposed zoning change be rejected. On February 9, 1978, the Mayor and Board of Aldermen for Westlake met at their regular meeting, and the proposed re-zoning of the property was formally rejected.
On May 22, 1978, plaintiff filed this suit for a writ of mandamus, contending that the refusal to grant his requested zoning change was improper.
After a lengthy trial, the trial judge decided that the action of the Mayor and Board of Aldermen was incorrect, and judgment for injunctive relief, requiring that the property be rezoned as requested, was granted. From this judgment, defendants appeal.
The sole issue involved on appeal is whether the trial judge was correct in reversing the decision of the Mayor and Board of Aldermen to keep the current zoning of the property as R-M, Multi-Family Residence.
The power of municipal governing authorities to adopt and amend zoning regulations is derived from the police powers vested in those bodies. La.R.S. 33:4721, et seq. sets forth the statutory procedures required for adopting and amendment zoning regulations.
We set forth the general rules for judicial review of zoning regulations in Hardy v. Mayor and Board of Aldermen, City of Eunice, 348 So.2d 143 (La.App. 3rd Cir. 1977), writ denied 350 So.2d 1212 (La.1977), wherein we stated:
"Zoning ordinances adopted in accordance with the procedures set out in the enabling statutes are presumed to have been adopted by the municipal authorities for valid purposes. All such ordinances are presumed to be valid, and the burden is on the party attacking a zoning ordinance to overcome this presumption of validity. The court will uphold the ordinance unless it is clearly shown that the action of the governing authority was arbitrary or unreasonable, or that the action taken violated a provision of the constitution or of the enabling statutes. Doubtful cases will be decided in favor of the validity of the zoning law. Sears, Roebuck & Company v. City of Alexandria, 155 So.2d 776 (La.App. 3 Cir. 1963); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974).
A court will not substitute its views for those of the municipal governing body as to the wisdom of or the need for a change in the zoning regulations, except when it appears that there has been an abuse of discretion or an excessive use of power. The exercise of its police power by a municipal governing authority in establishing or amending zoning regulations will not be upheld, if it is shown that *603 there has been an abuse of discretion or the excessive use of power, or that the action taken was arbitrary or unreasonable, or that it bears no relation to the health, safety or general welfare of the public. Four States Realty Co., Inc. v. City of Baton Rouge, supra; Meyers v. City of Baton Rouge, 185 So.2d 278 (La. App. 1 Cir. 1966)."
348 So.2d at page 148.
Turning to the facts of the instant case, the subject property consists of 7.4 acres and is surrounded on all sides by property zoned R-1, Single Family Residential. Although there are some areas in the vicinity of the tract in question which have other zoning classifications, the majority of development in the area has been for single family homes. There are a few isolated mobile homes occupying land in the area. However, these are non-conforming uses, having been there prior to the enactment of the zoning ordinances for Westlake.
The property itself is located in the southwestern area of the city, approximately 175 feet north of the Houston River Road, which serves as the southern boundary of the town. The Continental Oil Company owns the land to the south of the Houston River Road in the vicinity of the subject property. At the present time, Continental is not using this land.
A comprehensive zoning ordinance was enacted in Westlake in 1968. However, the scheme failed to provide any classification which would permit mobile home parks, even though there was a mobile home park in the city at that time, which is still there. In 1970, the ordinance was amended in order to designate two additional classifications, T-1, Mobile Home Park "A", and T-1, Mobile Home Park "B." The zoning ordinance was amended again in 1973, in order to designate certain areas of the town where the parking of mobile homes would be permissible. The subject property is not located in one of these areas.
After the conclusion of the Zoning Commission meeting of February 2, 1978, for consideration of plaintiff's re-zoning application, the Commission sent its report to the Mayor and Board of Aldermen, which stated, in part:
"The Zoning Commission felt that this rezoning request should be denied for the following reasons:
1. Those residents who live in the immediate area were opposed.
2. There would be an undesirable increase in traffic on all the access streets to this area. Any increase in traffic increases noise which is not desirable.
3. There was a question whether the nearby sewer systems would handle the increased load if the 47 units came to pass.
4. It was fully recognized that more people desire to settle down and move into Westlake than there is housing available, but it is also recognized that very shortly, there will be no more land available in Westlake for houses or trailers unless the town annexes more land. Allowing this mobile home park will not solve the long-range problem of housing in Westlake. The proposal that people cannot afford to buy houses was refuted last year when there were 73 new houses started and it is obvious that all available land in Westlake will be filled with houses soon. It was also felt that the taxes paid by mobile home owners would be much lower than those paid by owners of houses; therefore, mobile home owners would not be paying their fair share for maintenance of the sewerage system, streets, water system, police and fire protection, and administration.
For the above reasons, the Zoning Commission recommends to the Mayor and Board of Aldermen that the above rezoning request be denied."
As mentioned previously, this recommendation was accepted by the Mayor and Board of Aldermen on February 9, 1978.
*604 At trial, Mr. Kirk called several members of the Board of Aldermen as witnesses. All of these witnesses testified that the major consideration which persuaded them to vote against the zoning change was the opposition of the residents in the area. None attached much significance to traffic increases, inadequate sewerage systems, and disproportionate taxation. Additionally, plaintiff introduced other witnesses, which, we feel, clearly showed that there is a housing shortage in Westlake, that there is a dearth of mobile home spaces in Westlake, that the placement of a mobile home park in this area would not cause an unreasonable increase in traffic, that the sewerage system could handle the proposed mobile home park, and that there would be as much or more tax revenue generated by developing the land into a mobile home park than as single residences.
However, even though plaintiff effectively proved that the mobile home park would not create the problems anticipated by the Zoning Commission and the Mayor and Board of Aldermen, we do not feel that he has borne the burden of proof required of one who desires a Court to substitute its views for those of a municipal governing body.
After reviewing the many cases in this area, we are of the opinion that it was necessary for plaintiff to show that the current zoning of the property was unreasonable, in addition to showing the merits of his requested zoning change. This he did not do.
For example, in Trustees Under The Will of Pomeroy v. Town of Westlake, 357 So.2d 1299 (La.App. 3rd Cir. 1978), writ denied 359 So.2d 205 (La.1978), we reversed the trial court's affirmation of the Westlake Mayor and Board of Aldermen's refusal to re-zone a tract of property from R-2, Single Family Residential, to 1-1, Light Industrial. In so doing, we determined that the property involved was the only section of Westlake land on the Calcasieu River Bank zoned residential, and that the property was "completely unsuited for residential development." The evidence also showed that, while the property served as a buffer zone for the peace and quiet of its neighbors, it did so at the expense of its owners. We also determined that the existing zoning of the property was so oppressive that it deprived the owner of all practical use of his property and was, therefore, an unconstitutional taking of property without expropriation and compensation. We further found that the existing zoning was patently discriminatory insofar as it did not conform to the zoning of the surrounding property. Consequently, judicial action to force the municipal authorities to change the zoning classification was taken as urged; however, such action was taken only after a showing that the existing zoning classification was improper.
In Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4th Cir. 1967), the Fourth Circuit affirmed the reversal by the trial court of a zoning change of the Jefferson Parish Council. In that case, a square block of property in Jefferson Parish was zoned commercial and had some commercial development. The Council re-zoned the property to residential, and the owners of the remaining property in the square objected. The Court found that the remaining property was "completely valueless as a residential property and would, in fact, be practically unsalable." The municipal authorities were incorrect in rezoning the property, and, it was then that the appropriate judicial relief was granted.
In the instant case, as stated previously, the subject property is in a residential area and is bounded by property zoned for single family residences. One of the expert witnesses, a real estate broker, even went so far as to state that the present zoning of the property was "ideal." Certainly, its classification as multi-family residence will not remove the property from commerce, nor will it prohibit its further use or development as in the Pomeroy case, supra.
Judicial review of the propriety or wisdom of municipal authorities in exercising their police power by creating zoning ordinances is quite a serious and difficult undertaking because of the often far reaching *605 consequences of such action. Judicial power will be brought to bear only when there has been an abuse of discretion or an excessive use of power, or when it can be shown that the action taken by the authorities is unreasonable or arbitrary, or does not bear a satisfactory relationship to the public health, safety, or morals.
Plaintiff's burden in the instant case was not only to show that his requested change would be a reasonable one, but also that the municipality's classification of the property was unreasonable. He failed in proving the latter.
Consequently, we find that the trial judge erred in granting plaintiff's requested injunction requiring that the city authorities rezone the property in question.
For the above reasons, the judgment of the District Court is reversed. Plaintiff's suit is ordered dismissed at his cost.
REVERSED AND RENDERED.