561 So.2d 482 (1990)
PALERMO LAND CO., INC. & Browning-Ferris, Inc.
v.
PLANNING COMMISSION OF CALCASIEU PARISH & the Police Jury of Calcasieu Parish.
Raymond L. NELSON, Sr., Raymond L. Nelson, Jr., Edward W. Nelson, and Patricia Nelson Brummett
v.
PLANNING COMMISSION OF CALCASIEU PARISH & the Police Jury of Calcasieu Parish.
No. 89-C-2562.
Supreme Court of Louisiana.
April 30, 1990.
Rehearing Denied June 21, 1990.
*484 Mack Barham, Robert Arceneaux, Barham & Associates, New Orleans, Richard Ieyoub, Dist. Atty., and Terry Manuel, Asst. Dist. Atty., for applicant.
Joseph Delafield, H. Paul Honsinger, Carmouche & Gray, Lake Charles, for respondents Palermo Land Co., Inc. and Browning-Ferris, Inc.; R. William Collings, and Edward W. Nelson, Collings & Collings, Lake Charles, for respondents Raymond L. Nelson, Sr., Raymond L. Nelson, Jr., Edward W. Nelson, and Patricia Nelson Brummett.
COLE, Justice.[*]
The primary issue in these consolidated cases is whether the decision of the Police Jury of Calcasieu Parish to rezone several tracts of land, thereby preventing expansion of an existing landfill, was arbitrary and capricious, and therefore invalid. For the reasons assigned herein, we hold the Police Jury's decision was not arbitrary and capricious, and we reverse the court of appeal's contrary holding.

FACTS AND PROCEEDINGS BELOW
This litigation involves three adjacent tracts of land in Sulphur, Louisiana. The western tract is owned by the Palermo Land Company, Inc. (Palermo), the eastern tract is owned by the Nelsons, and the middle tract is a solid waste landfill owned and operated by Browning-Ferris, Inc. (BFI). Prior to the instigation of this lawsuit, both Palermo and Nelson had negotiated with BFI to sell their property to it for expansion of the landfill, which is nearing capacity. When these negotiations took place, both tracts were zoned "heavy industrial" (I-2), a classification which, at the time, allowed for a landfill. The area surrounding these tracts is primarily zoned "light industrial" (I-1) and "mixed residential" (R-2). This lawsuit arose as a result of the subsequent rezoning of the Palermo and Nelson tracts and two other contiguous tracts from "heavy industrial" (I-2) to "light industrial" (I-1) in February of 1988.[1] An I-1 classification precludes use of the property as a landfill.
The Nelson and Palermo tracts were not always zoned I-2. The Palermo tract was originally zoned I-1 (light industrial) in October of 1980. The Nelson tract was originally zoned part C-3 (central business commercial), and part I-2 (heavy industrial), also in 1980.
At one time, the BFI landfill site (the middle tract), while an existing landfill, was owned by the Nelson family. After the site was acquired by BFI, Joseph R. Palermo, Jr., then owner of the Palermo tract, filed suit against BFI for damages caused by the alleged devaluation of his property due to BFI's landfill operations.
In 1981 the Nelsons were granted a rezoning of the C-3 portion of their tract to make the entire tract I-2. Sometime in 1985, Joe Palermo agreed to sell his tract to William Clark, who wanted to use the *485 property as a site for the manufacture of metal buildings. This use of the property would require rezoning from I-1 to I-2. The stipulated (but not actual) price was $150,000 with a downpayment of $5,000. A counter letter was signed acknowledging that the actual price of the property was $40,000 per acre, or a total of $2.4 million. The counter letter also provided the purchase and sale agreement was not to be recorded, and that the sale was subject to Clark's success in realizing his plans for an industrial development. The unrecorded counter letter, which placed on his property a value in excess of $2 million, was Palermo's means of preserving his property devaluation claim against BFI in the event the sale to Clark was not completed.
When Clark requested rezoning of Palermo's tract in 1985, one of the Nelsons informed the Police Jury that he was negotiating with BFI to sell the Nelson tract for extension of the BFI landfill. In an attempt to avoid the possibility of competition from Palermo, he asked the Police Jury to condition the rezoning of the Palermo tract from I-1 to I-2 so as to exclude use of the Palermo tract as a landfill. The Police Jury considered Mr. Nelson's request, and the Ways and Means Committee recommended adoption of a new ordinance conditioning use of property for landfill purposes upon issuance of developmental permits. The Police Jury voted against the recommendation, and granted Clark's rezoning request without the condition suggested by Mr. Nelson.
Clark's industrial development deal fell through. Thereafter, in October of 1985, BFI contacted Joe Palermo through his attorney and began negotiating for the purchase of the Palermo tract, conditioned upon Joe Palermo's dismissal of his lawsuit against BFI. In December of 1985, Palermo and BFI reached an agreement under which the property would be sold to BFI for $1.4 million if BFI could obtain all necessary licenses and permits for operation of a landfill on the property by March 1, 1988. Failure to close the deal by this date was to result in nullification of the purchase agreement.
BFI expended approximately $580,000 preparing the necessary studies which it presented to the Department of Environmental Quality (DEQ) for licensing. In response to requests from citizens of Sulphur, including a petition with over 5,000 signatures, the Planning Commission in January and February of 1988, conducted a zoning reclassification feasibility study of an area including the three tracts at issue. The study found that land use in the area was 10% residential, 5% publicly owned, 20% commercial, and 65% undeveloped, with the greatest increase in development being for residential uses. The study also measured traffic flow, topography, flood zones, and degrees of environmental contamination. The study recommended rezoning the Palermo tract, the Nelson tract, and two other pieces of property from I-2 to I-1. There were public hearings before both the Planning Commission and the Police Jury. The Planning Commission voted 4-3 to recommend the rezoning. On February 28, 1988, the Police Jury voted 8-6 to rezone the area.
On March 4, 1988, Palermo and BFI filed suit to restore I-2 zoning to the Palermo tract. The Nelsons filed a suit which was consolidated with that of Palermo and BFI. At some point BFI bought thirteen of the sixty acres of the Palermo tract, and by November of 1988 it had increased its total expenditures to more than $1.2 million. On March 11, 1988, DEQ informed BFI that its permit application for expansion of its landfill had 47 deficiencies and that the application would not receive further review unless the zoning of the Palermo tract was restored to allow use as a landfill. Then, in July of 1988, the Police Jury accepted a recommendation of the Planning Commission to create a special zoning classification for solid waste landfills, I-2R, heavy industrial restricted.[2]
*486 The trial court dismissed plaintiffs' claim of equitable estoppel, and found the actions of the Police Jury were not arbitrary and capricious, thus the rezoning of the Nelson and Palermo tracts was valid. The court of appeal reversed. Palermo Land Co. v. Planning Com'n, 550 So.2d 316, and Nelson v. Planning Com'n, 550 So.2d 328 (La.App. 3rd Cir.1989). It based its holding upon the doctrine of equitable estoppel, and upon a finding that the rezoning was subject to the "change or mistake" rule under which it failed as an arbitrary and capricious exercise of police power. We granted certiorari to review the decision of the Third Circuit. 553 So.2d 478 (1989).

EQUITABLE ESTOPPEL
The court of appeal found the Parish could be equitably estopped from rezoning property when the property owner justifiably relied upon conduct by the Parish indicating the property would not be rezoned. As authority for its holding, the court of appeal cited State ex rel. Re-Lu, Inc. v. City of Kenner, 284 So.2d 866 (La.App. 4th Cir.1973), and acknowledged this is the only Louisiana case in which equitable estoppel was discussed in the zoning context. In City of Kenner, the Fourth Circuit declined to apply equitable estoppel, although the plaintiff developer had relied upon information that if he obtained a preliminary permit before adoption of the new ordinance, construction would be allowed within one year of the permit. The Fourth Circuit found the developer was not justified in relying upon the information he had received because he had knowledge the new ordinance was under consideration prior to his purchase of the property.
Rather than finding City of Kenner distinguishable, as did the court of appeal, we find the facts of this case analogous. The acts of the Parish discussed by the Court of Appeal as indicative that the property would not be rezoned are as follows: 1) the upzoning of the Palermo property from I-1 to I-2 in 1985; 2) the failure of the Parish to adopt the recommendation of the Ways and Means Committee in July of 1985 conditioning use of property for landfill purposes upon issuance of developmental permits; 3) three identical letters sent by three police jurors on October 16, 1986 to BFI expressing that the author of each letter, "along with some of [his] colleagues," supported a landfill expansion; 4) an assurance from one police juror to Palermo that BFI was free to go about the business of preparing for the landfill; 5) discussions between Palermo and the parish planner of BFI's proposed landfill expansion; 6) a letter from the Superintendent of Solid Waste for the Police Jury requesting a copy of the proposed landfill expansion site plan, and stating that several police jurors had inquired about the location of the proposed entrance and exit gates for the expansion; 7) a newspaper interview with the parish planner in which he said he was aware that BFI was in the process of preparing a permit application with DEQ, and noted there probably would be some opposition to the expansion; and 8) a letter to Palermo, prepared by a parish official, stating that as of November 11, 1987, the Palermo tract was zoned I-2 and could be used as a solid waste disposal site. The court of appeal found plaintiffs justifiably relied upon the foregoing acts of the Parish (i.e., justifiably believed their property would not be rezoned), and that these acts provided sufficient grounds for an estoppel. We disagree.
The 1985 upzoning of the Palermo tract from I-1 to I-2 cannot be considered indicative that the property would not be rezoned again in the future. On the contrary, it should have been considered an indication that zoning ordinances are subject to change. Both Nelson and Palermo had seen their property rezoned before upon request, and they had no reason to believe the property would not or could not be rezoned again, or that the requests and concerns of other members of the community would be ignored in rezoning decisions.[3]
*487 The Parish's failure to restrict its 1985 rezoning of Palermo's property in accordance with the recommendation of the Ways and Means Committee and the request of Nelson should have alerted plaintiffs to the possibility of the adoption of this restrictive classification in the future. The Parish refused to condition the 1985 rezoning out of a sense of fairness to Palermo, since Nelson would not consent to the same restriction being placed on his property. As defendants point out in their brief, "those who wanted to restrict the reclassification, as well as some of those who did not, expressed public concern about the possibility that the property might be used as a landfill, and called for a planning effort to deal with the landfill question parishwide. That fact was communicated to BFI by its attorney. Surely, [plaintiffs] were aware, or should have been, that the landfill question was far from settled in Calcasieu Parish." Although the new classification was not adopted at that time, there were no assurances it would never be adopted.[4]
The three identical letters sent by three police jurors indicate, if anything, that only three of the 15 police jurors firmly and definitely supported the landfill expansion. The language, "I, along with some of my colleagues," should have indicated to BFI that only three police jurors were willing to state in writing that they were in favor of the landfill, especially since the letters were identical. See Federal Crop Insurance Company v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (In dealing with the government, a private citizen "takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.") Moreover, it was not reasonable to assume that because some police jurors supported the landfill expansion, the Police Jury would never exercise its police powers to consider the question. Three is far short of the majority needed to pass a new zoning ordinance. Plaintiffs should have been aware, despite assurances from some, that parish officials were not unified on the issue of extending the landfill.
The assurance from one police juror to Palermo that BFI was free to go about preparing for the landfill was simply that: an assurance from one police juror that, at the time, a landfill operation on his property was permissible. The same is true of the letter from a parish official stating the existing zoning classification of his property, along with its permissible uses. In fact, this letter is even less convincing as evidence of justifiable reliance since it was not written by a member of the police jury, the governing body with authority to change existing zoning classifications. The letter was no more than a neutral statement as to the existing zoning classification.
The discussions between Palermo and the parish planner, the letter from the Superintendent of Solid Waste, and the newspaper interview, signify nothing more than an awareness on the part of the Parish of BFI's plans to expand its landfill. Awareness of matters of this sort is not surprising.
None of these actions supports a finding that the Parish, particularly the Police Jury, indicated to plaintiffs that they would *488 not rezone the property at issue. In fact, Joe Palermo testified, "The Calcasieu Parish Police Jury or Planning Commission has never represented to me that they would or would not exercise any zoning authority over my property." Even when considered together, the Parish's actions do not provide sufficient grounds for an estoppel. Moreover, plaintiffs' past actions signify an acute awareness of the changeability of zoning classifications, and a sophisticated familiarity with the workings of the Planning Commission and the Police Jury.
In 1981, Nelson requested and obtained a rezoning of the C-3 portion of his property to I-2. Palermo's purchase and sale agreements with both Clark and BFI were conditioned upon proper zoning for the buyer's intended use of the property, signifying the parties' awareness that the zoning might change. The facts do not support a claim of detrimental reliance by either Palermo or Nelson. Neither has expended funds in preparation for the landfill, and neither has shown he could have sold his property to another buyer, at the time, for an equal or greater price.
BFI's conditioning of its purchase of Palermo's property on proper zoning indicates conclusively that it was not relying on the continued existence of the I-2 zoning. Apparently, BFI was aware that:
Everyone holds his property subject to the police power. Because a person applies for a permit at a time when it might be lawfully granted does not give him a vested right to the permit. An ordinance may be validly passed after the making of such application which would prohibit the issuance of the permit.
State ex rel. Manhein v. Harrison, 164 La. 564, 114 So. 159, 163 (1927). See also, State ex rel. Fitzmaurice v. Clay, 208 La. 443, 23 So.2d 177, 181 (1945); Wes-T-Erre Development Corporation v. Parish of Terrebonne, 416 So.2d 209 (La.App. 1st Cir.), writ denied, 421 So.2d 251 (La.1982); Glickman v. Parish of Jefferson, 224 So.2d 141 (La.App. 4th Cir.1969); State v. City of New Orleans, 166 So.2d 520 (La.App. 4th Cir.1964); State ex rel. Shaver v. Mayor and Councilmen of Town of Coushatta, 196 So. 388, 391 (La.App. 2d Cir.1940).
As regards the use of equitable estoppel, and its viability under Louisiana law, this court stated in Howard Trucking Company v. Stassi, 485 So.2d 915, 918 (La.1986):
"Estoppel" in its various forms seems to be a doctrine of last resort. In Louisiana, no statutory material and no body of jurisprudence justifies its use. In this court, we have discussed it, in modern times, only to disallow a claim that the opponent ought not to be able to make a certain claim or defense. (citations omitted)
As regards judicial review of zoning decisions in Louisiana, the Fourth Circuit stated, in Paternostro, v. Parish of Jefferson, 289 So.2d 327, 332 (La.App. 4th Cir.1973), writ refused, 293 So.2d 183 (1974):
Perhaps there is merit in this [expert] opinion, but this is not a matter of equity but rather a matter of law and we cannot conclude that the Jefferson Parish Council erred as a matter of law; that is, was arbitrary because it did not conclude as did Mr. Bisso that the equities were in favor of the change plaintiffs proposed. (emphasis added).
The matters at issue here are controlled by positive written law. LSA-R.S. 33:106 provides planning commissions may "from time to time amend, extend, or add to" a master plan for the physical development of the unincorporated territory of a parish. LSA-R.S. 33:4725 provides municipal zoning regulations may "from time to time, be amended, supplemented, changed, modified or repealed." Equitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law. La.C.C. art. 21; Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75 (1945); Louisiana State Troopers v. La. State Police, etc., 417 So.2d 440 (La.App. 1st Cir.1982); Chambers v. Parochial Employees' Retirement System, 398 So.2d 102 (La.App. 3d Cir. 1981), writ denied, 400 So.2d 1382 (La. 1981); Frazer v. Day, 292 So.2d 870 (La. App. 1st Cir.1974); Port Finance Company v. Ber, 45 So.2d 404 (La.App.Orl.1950).
*489 See also, Locker v. Wilson, 536 So.2d 441 (La.App. 2d Cir.1989), writ denied, 537 So.2d 210 (La.1989).[5] In a case presenting circumstances where an estoppel might be warranted, the traditional test of whether the municipality's actions were arbitrary, unreasonable, or capricious provides a sufficient basis upon which such an unfair rezoning could be invalidated.

BURDEN OF PROOF THE CHANGE OR MISTAKE RULE
The Third Circuit also invalidated the rezoning at issue on the grounds of arbitrariness and capriciousness. Although it cited Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975), as the primary authority for review of a rezoning decision, it based its holding on the "change or mistake" rule set forth in Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4th Cir.1967). Dufau involved the rezoning of property from commercial to residential. The rezoned property was surrounded by commercially zoned property and commercial activity. The Fourth Circuit found the rezoned property "would be completely valueless as residential property and would, in fact, be practically unsalable." Id. at 337. It then summarized what it termed "[t]he jurisprudential guidelines for zoning and zoning reclassification," two of which were as follows:
Before a zoning board rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that reclassification ought to be made.
The burden of proof of original mistake or the need for a substantial change is upon the proponents of the change.

Id. at 338.
Without citing the source of these guidelines, the Dufau court affirmed the trial court's judgment invalidating the rezoning ordinance. As appellants herein assert in their brief, there is not one Louisiana case which could be fairly summarized to produce these rules.[6]Dufau is an anomaly, and its "change or mistake" approach has not only failed to receive acceptance in Louisiana; it has been rejected in the vast majority of jurisdictions which have considered the question.[7]
Additionally, Dufau is factually distinguishable. There, the court was faced with what apparently constituted a "spot zoning." "`Spot zoning' is the singling out of *490 a small parcel of land for a use classification which is different from that of the surrounding area, usually for the benefit of the owner of that parcel, or for the benefit of the owner of some other property in that area, and to the detriment of other owners." Hardy v. Mayor and Bd. of Aldermen, etc., 348 So.2d 143, 148 (La.App. 3d Cir.1977); Sears Roebuck and Company v. City of Alexandria, 155 So.2d 776 (La.App. 3d Cir.1963), writ denied, 245 La. 83, 157 So.2d 230 (1963). In the instant case, none of the four properties that were reclassified were singled out and changed to a zoning classification different from the property that surrounds them. In fact, failure to reclassify these four properties as light industrial would leave a "spot" of heavy industrial property surrounded on three sides by property zoned light industrial. The other side is bounded by Interstate 10 fronting an area that is predominantly residential.
Although a spot zoning seemed apparent, the Dufau court did not mention spot zoning, or the similar practice known as "piecemeal" zoning. "Piecemeal" zoning "usually refers to a rezoning which does not involve a substantial portion of the land within a community and which was not undertaken after a careful study by the planning staff to implement a broad public policy." Ziegler, Rathkopf's The Law of Zoning and Planning, sec. 1.04 (1989). Plaintiffs argue the rezoning at issue was a piecemeal zoning, thus their burden of proof should be substantially decreased, or completely reversed through use of the "change or mistake" rule. As discussed, infra, the same presumption of validity attaches to all zoning decisions, and the burden rests on the challenger to overcome this presumption. Four States Realty, supra; Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982); Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219 (La.1981); Furr v. Mayor and City Council of Baker, 408 So.2d 248 (La.1981); Southside Civic Association v. Guaranty Savings Assurance Co., 339 So.2d 323 (La.1976). While a heightened scrutiny may be applicable in such cases, as suggested by this court in Four States Realty, the burden of proving the rezoning ordinance invalid is extraordinary. Hernandez v. City of Lafayette, 399 So.2d 1179 (La.App. 3d Cir.1981). The same test applicable to ordinary zoning decisions applies to piecemeal zonings. The opponent must show a real or substantial relationship to the general welfare is lacking.
In this case, the court of appeal found a "piecemeal" zoning reclassification was apparent. It quoted the following language from Four States Realty, apparently as justification for its use of the Dufau guidelines:
[R]ezoning on a piecemeal or spot basis is highly suspect. Generally, property owners may rely upon the previous exercise of police power in zoning, expecting that changes in zoning will only be made so as to affect vested property interests when the change is required to assure the public welfare."
Id. at 672.[8]
Immediately preceding this language from Four States Realty is the following: "All ordinances are presumed valid; whoever attacks the constitutionality of an ordinance bears the burden of proving his allegation." (citations omitted) (emphasis added). Id. This court did not set forth a separate rule or burden of proof for ordinances constituting piecemeal or spot zoning, although Four States Realty apparently involved a spot zoning. Our acknowledgment of the suspect nature of piecemeal or spot zoning merely suggested a heightened level of scrutiny would be applied, in such cases, to the traditional judicial review of zoning decisions. This court heard the Four States Realty matter twice, and in neither hearing did we shift the burden to the municipality to justify its rezoning of the property. Nor did we apply the "change or mistake" rule.
*491 Nor have the courts of appeal of this state adopted such a distinction between "ordinary" zoning reclassifications and piecemeal or spot zoning reclassifications. See Villa Del Ray Citizens Associations v. City of Baton Rouge, 273 So.2d 574, 575 (La.App. 1st Cir.1973), writ denied, 277 So.2d 444 (La.1973); Smith v. City of Baton Rouge, 233 So.2d 569, 573 (La.App. 1st Cir.1970); Cook v. Metropolitan Shreveport Board of Appeals, 339 So.2d 1225, 1233 (La.App. 2nd Cir.1976), writ denied, 341 So.2d 1123 (La.1977); Archer v. City of Shreveport, 85 So.2d 337, 343 (La.App. 2nd Cir.1956); Decuir v. Town of Marksville, 426 So.2d 766, 768-69 (La.App. 3rd Cir. 1983), writ denied, 430 So.2d 83 (La.1983); Hunters Grove Homeowners Association v. Calcasieu Parish Police Jury, 422 So.2d 673, 677 (La.App. 3rd Cir.1982) (explicitly refusing to follow the "change or mistake" rule); Hernandez v. City of Lafayette, 399 So.2d 1179, 1181-82 (La.App. 3rd Cir.1981), app. dismissed, 455 U.S. 901, 102 S.Ct. 1242, 71 L.Ed.2d 440 (1982); Hardy v. Mayor and Board of Aldermen, 348 So.2d 143, 148 (La.App. 3rd Cir.1977), writ denied, 350 So.2d 1212 (La.1977); Kirk v. Town of Westlake, 373 So.2d 601, 602-03 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 1268 (La.1979); Hibernia National Bank in New Orleans v. City of New Orleans, 455 So.2d 1239, 1241 (La.App. 4th Cir.1984), writ denied, 459 So.2d 542 (La.1984); Paternostro v. Parish of Jefferson, 289 So.2d 327, 331 (La.App. 4th Cir.1973), writ denied, 293 So.2d 183 (La.1974); Lauer v. City of Kenner, 536 So.2d 767, 771 (La.App. 5th Cir.1988), writ denied, 538 So.2d 594 (La. 1989); Robertson v. Parish of Jefferson, 465 So.2d 787, 790 (La.App. 5th Cir.1985).[9]
The presumption of validity attached to zoning ordinances is a well established principle of law in Louisiana. It applies to all zoning ordinances, including piecemeal and spot zonings, the validity of which may be adequately reviewed under the guidelines set forth in Four States Realty, supra. The Third Circuit erred in its failure to apply this presumption and thereby place upon plaintiffs the burden of proving a lack of relation between the rezoning at issue and the welfare of the Calcasieu Parish community.

ARBITRARY AND CAPRICIOUS STANDARD
Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies. Four States Realty, supra, and cases cited therein; Folsom Road Civic Assoc., supra; Morton v. Jefferson Parish Council, 419 So.2d 431 (La. 1982). As the local governing body with final zoning authority, the Police Jury of Calcasieu Parish has the authority to amend, supplement, change, modify or repeal existing zoning ordinances. LSA-R.S. 33:106, 4725.
As early as 1923, this court set forth the proper scope of judicial review of zoning decisions. In State ex rel. Civello, 154 La. 271, 97 So. 440 (1923), this court stated:
It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
* * * * * *
It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballotnot the courts.
Id. 97 So. at 444. See Village of Euclid v. Amber Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), in which Civello is cited with approval and quoted. See also, Hernandez v. City of Lafayette, 399 So.2d 1179, 1182 (La.App. 3 Cir.1981), wherein the Third Circuit correctly noted, "even where no competent evidence to support a *492 zoning decision was adduced in front of the governing body, the resulting legislation will nevertheless be upheld if the result is supported by evidence adduced at trial." Id. at 1182.
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law.[10]Hernandez v. City of Lafayette, supra; Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La.App. 4 Cir.1978). Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.
The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in each parish.
The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of each community. Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority. Four States Realty, supra, and cases cited therein.

ANALYSIS
In an attempt to justify its reversal of the burden of proof, the court of appeal differentiated between comprehensive zoning and reclassification, or rezoning, relying on jurisprudence from the state of Washington. While the distinction noted is apt, it is without meaning in this case, since the burden of proof and the scope of judicial review are the same, whether the zoning at issue derives from a parish's original comprehensive zoning plan, or from a change in the original plan.[11]
*493 The trial judge was correct in placing the burden of proof upon plaintiffs to show an arbitrary and unreasonable exercise of authority, and we agree with his conclusion that plaintiffs failed to carry their burden of proof. In his reasons for judgment, the trial judge stated:
A careful review of all the evidence presented shows that the Police Jury took into account, the possible decrease in value of land located next to the landfill, the increase in truck traffic through a residential neighborhood, the unsightliness of the landfill located directly next to a major Interstate, the litter or trash dropped on roads used by trucks going to and from the landfill, the odor emanating from the landfill toward residential areas when the wind was blowing in the correct direction, the increase in birds and bird droppings causing a nuisance to neighboring residents due to the location of the landfill, and the overall resulting negative public perception of the area of the landfill....
It is the opinion of this Court that the Police Jury acted in good faith in the rezoning of this property and the basis of that rezoning was based upon the relationship evidenced by the facts for the public health, safety, morals, or general welfare of the Parish. Certainly there was room for a reasonable difference of opinion insofar as whether this property should be rezoned or not. But the plaintiff has failed to establish sufficient evidence to show by a preponderance of the evidence that the rezoning of the Police Jury bore no substantial relationship to the public health, safety, morals, or general welfare of the municipality, and is thus arbitrary, capricious and unreasonable.
Whenever the propriety of a zoning decision is debatable, it will be upheld. Hunters Grove Homeowners Association, supra, Hernandez v. City of Lafayette, supra, Hardy v. Mayor and Bd. of Aldermen, etc., supra, and, Sears Roebuck & Company, supra. The evidence cited by the trial judge provides a sufficient basis from which to conclude the proposed landfill expansion might be a threat to the health, safety, or general welfare of the community.[12] The court of appeal discussed the testimony of plaintiffs' experts and almost completely discounted the testimony presented on behalf of defendants. Rather than finding the conclusions of the trial judge manifestly erroneous, the court of appeal reviewed the evidence under the "change or mistake" rule, which was not applied by the trial judge, and found defendants, upon whom it placed the burden of proof, had failed to carry their burden.
*494 Plaintiffs' experts opined that the change or mistake rule is an essential element in justifying rezoning because rezoning is essentially an "after the fact" attempt at planning, rather than an implementation of a land use plan. As the court in Archer v. City of Shreveport, 85 So.2d 337, 373 (La. App.1956), pointed out:
It would appear that the same reasons and basis justifying zoning of an area in the first instance would likewise justify a change in classifications, if, and when, conditions and circumstances warrant it and justify the same. The grounds justifying either, ordinarily, would have the same application in both situations.
Equally true is the following statement from Paternostro, supra:
One of the great zoning problems undoubtedly confronting any governing body is that pure zoning theory is difficult to apply to an area which began to develop before the adoption of a comprehensive zoning ordinance.
The nature of zoning authority is such that "after the fact" attempts at planning, or reclassifications, are often necessary to accommodate the changing needs of a community. Whether Calcasieu Parish began to develop prior to adoption of a comprehensive zoning plan, or simply found a change in the original zoning plan was necessary, it had the authority to change existing zoning classifications to aid the development of the community and steer its development in a direction commensurate with the needs and desires of its residents.
Plaintiffs argue strenuously that the down-zoning at issue was improper because it was solely a reaction to public opposition. The Third Circuit's discussion of a similar issue in Kirk, supra, is particularly relevant on this point. In Kirk, cited by the court of appeal, plaintiff had requested a rezoning of his property which would allow for its use as a mobile home park. The Zoning Commission denied the request for several reasons, all of which were refuted by plaintiff except for the public opposition. In upholding the Commission's denial of plaintiff's request, the court noted:
At trial, Mr. Kirk called several members of the Board of Aldermen as witnesses. All of these witnesses testified that the major consideration which persuaded them to vote against the zoning change was the opposition of the residents in the area. None attached much significance to traffic increases, inadequate sewerage systems, and disproportionate taxation. Additionally, plaintiff introduced other witnesses, which, we feel, clearly showed that there is a housing shortage in Westlake, that there is a dearth of Mobile home spaces in Westlake, that the placement of a mobile home park in this area would not cause an unreasonable increase in traffic, that the sewerage system could handle the proposed mobile home park, and that there would be as much or more tax revenue generated by developing the land into a mobile home park than as single residences.
However, even though plaintiff effectively proved that the mobile home park would not create the problems anticipated by the Zoning Commission and the Mayor and Board of Aldermen, we do not feel that he has borne the burden of proof required of one who desires a Court to substitute its views for those of a municipal governing body.
373 So.2d at 604.
Similarly, we find plaintiffs have failed to show the Police Jury did not establish a connection between the public welfare and the rezoning. Whether public opposition motivated the rezoning at issue is therefore irrelevant. The statutory restriction placed upon governing officials when enacting zoning ordinances is that the ordinance be for the purpose of promoting health, safety, morals, or the general welfare of the community. LSA-R.S. 33:107, 4721. Zoning ordinances generally result from a rational decision-making process, and input from members of the community is not uncommon. Nor should it be. Those with zoning authority are elected officials, and as such, they represent the interests of those who elected them. The interests of the public are at the heart of *495 the welfare of a community. Thus, the concerns and desires of the electorate are an appropriate consideration in the decision-making process which exists for their benefit. As this court pointed out in Civello, supra, if a majority of the citizens are dissatisfied with the decisions of the zoning authority, "their recourse is to the ballot not the courts." Id. 97 So. at 444.
Plaintiffs also argue they have refuted defendants' evidence regarding unsuitability of the property for a landfill. Even if plaintiffs did successfully rebut the testimony of defendants' witnesses at trial (a point which we do not concede, since the trial judge, who heard and observed the witnesses, concluded otherwise), it still appears reasonable minds could differ on the question of whether the down-zoning was proper and prudent. While plaintiffs may have successfully rebutted or discredited the testimony of residents of nearby property, it is not difficult to conclude that a solid waste landfill near residential property may not be desirable, simply because of unsightliness, or offensive odors.[13]
Defendants' expert in land use planning, Dr. Dennis Ehrhardt, testified the rezoning of the study area was in accord with good land use planning. The truth in this statement is apparent, even to the untrained eye, when one views the study area both before and after the rezoning. Before the rezoning, the I-2 classification attached to the properties at issue created a peninsula of heavy industrial property in the middle of a light industrial corridor. After the rezoning, there remain several distinct areas which graduate from heavy industrial to residential, wherein a corridor of light industrial acts as a buffer between the residential and heavy industrial areas. Despite the more appropriate land use configuration which resulted from the rezoning, the court of appeal found "a mistake in judgment as to the original zoning, does not, in and of itself, justify rezoning." Additionally, the peninsula of heavy industrial zoning was created in part by the rezonings in 1981 and 1985 of the Palermo and Nelson properties. Thus, the court of appeal's reference to "a mistake in the original zoning" is erroneous. Excepting a portion of Nelson's tract, the properties at issue were not originally zoned I-2.
Dr. Ehrhardt testified further that the only land use of a landfill which has reached capacity is passive recreational use. He felt the use of this land as a landfill would eventually remove the tract from commerce. It was his opinion that this would be a waste of prime industrial or commercial property because the property borders on Interstate 10. The court of appeal found this factor was likewise insufficient as a basis for the rezoning. We find the factors discussed by Dr. Ehrhardt, along with those enumerated by the trial judge, sufficient to establish the requisite relationship between the ordinance and the health, safety, and welfare of the community. This evidence shows the proposed landfill would be likely to have a detrimental effect on the welfare of the residents near the site. Where the validity of the evidence *496 supporting the rezoning is "fairly debatable," it must be resolved in favor of the ordinance. See Rohan, Zoning and Land Use Controls (1989) at 39-3 and 4; Hernandez v. City of Lafayette, supra; Hardy v. Mayor and Bd. of Aldermen, etc., supra; Hunter's Grove, supra; Sears Roebuck & Company v. City of Alexandria, supra. Plaintiffs, having failed to provide sufficient proof to rebut the "debatability" of the evidence, and thereby prove an arbitrary and unreasonable abuse of power, cannot prevail in their challenge to the validity of the rezoning ordinance.

VALIDITY OF REZONING PROCEDURE
Plaintiffs argue the rezoning is invalid because it was enacted without proper notice. First, they complain that the January 19, 1988 Planning Commission meeting whereby the Planning Commission staff was directed to conduct the Reclassification Study was not preceded by three notices run in the local newspaper, as purportedly required by Acts 1960, No. 196, sec. 6. Second, plaintiffs complain that Palermo never received personal notice of the rezoning, as purportedly required by LSA-R.S. 33:4877.1.[14]
The January 19, 1988 meeting of the Planning Commission (the equivalent of a zoning commission in Calcasieu Parish) need not have been preceded by three official notices. Section 6 of Act 196 of 1960 only requires that three notices precede a zoning commission hearing which is held for the purpose of "making any recommendation to the Police Jury of the Parish." The January 19 meeting does not qualify as this type of hearing. At the meeting, the Planning [zoning] Commission merely directed its staff to conduct the Reclassification Study. No statute requires a hearing, or notice of a hearing, before the Planning Commission may issue such a directive. Presumably, the staff could have undertaken the Reclassification Study on its own initiative as part of its responsibilities. The Planning Commission did not accept the study and make a formal recommendation to the Police Jury until February 17, 1988. There is no complaint that the February 17 meeting was not preceded by the requisite three notices.
Plaintiffs' assertion that LSA-R.S. 33:4877.1 requires personal notification is likewise without merit. This statute requires the governing authority of a parish with a population of less than three hundred fifty thousand to "notify the owner or owners of record of the properties to be zoned or rezoned," at least ten days prior to the initial hearing on the matter. The statute contains no requirement of personal or actual notice. Plaintiffs admit there are no cases construing this provision. In Southside Civic Association v. Guaranty Savings Assurance, 339 So.2d 323, 326 (La. 1976), this court observed: "`Statutes requiring notice preparatory to the enactment or amendment of zoning measures typically provide for constructive rather than actual notice, as by publication in a local newspaper a specified number of times.... The courts have held rather uniformly that this contention [that actual notice is necessary] is groundless and that the statute need not provide for, nor the ordinance be passed upon, actual notice.'" Id. quoting from 36 A.L.R.2d 459. At trial, Palermo testified that he received no notice from the Planning Commission other than by publication. We deem the publication sufficient notice here.
Plaintiffs also contend the rezoning is invalid because it was not enacted according to a comprehensive plan, as that term is defined in LSA-R.S. 33:106. This statute sets forth the elements which must be contained in a comprehensive plan. The list includes things like the location of routes for various types of transportation, the locations of public buildings, the locations of public utilities for water, light, sanitation, communication, etc., and a zoning plan. Plaintiffs concede that defendants produced a document entitled "Comprehensive *497 Plan: Calcasieu Parish Regional Planning Commission," but they dispute the viability of this document under LSA-R.S. 33:106. The Parish's planning expert testified at trial that the zoning ordinances and maps of the Parish constitute a comprehensive plan for zoning. While the list contained in LSA-R.S. 33:106 is quite exhaustive and specific, it is doubtful that each parish had, at the outset, a planning map in conformity with the complexity suggested by this statute. This fact is not fatal to a parish's comprehensive plan, as long as such a plan exists, and amendments to or enlargements of the plan are not made in a chaotic fashion. See Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219, 1222 (La.1981). A parish's comprehensive plan will be deemed sufficient under LSA-R.S. 33:106 as long as amendments to the plan are enacted as the need for the specified public accommodations arises. The law does not require that "a single ordinance constitute the comprehensive plan." Folsom Road Civic Assoc, supra. As spelled out in R.S. 33:106:
As the work of making the whole master plan progresses, a commission may from time to time adopt and publish a part or parts thereof, any such part to cover one or more major sections or divisions of the parish or municipality, as the case may be, or one or more of the aforesaid or other functional matters to be included in the plan. A commission may from time to time amend, extend, or add to the plan.
We are of the opinion that the parish did comply with the requisites regarding the creation of a comprehensive plan. And, as noted by Dr. Ehrhardt, the rezoning ordinance at issue was enacted in accordance with good land use planning. It should not be invalidated simply because previous ordinances were allegedly contrary to good land use planning principles, or because they were not in conformity with the comprehensive plan. Those previous ordinances are not at issue in this case.

PREEMPTION
Both BFI and Nelson argue the rezoning is illegal because the entire field of regulation of sanitary landfills is preempted by state law. In Hildebrand v. City of New Orleans, 549 So.2d 1218, 1227 (La.1989), this court recognized the following formulation to determine the existence of preemption of local police powers: Local power is not preempted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating preemption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program.
Neither BFI or Nelson point to any express constitutional, codal, or statutory provision granting the state the sole power to "regulate" the siting of sanitary landfills, much less a statute explicitly preempting local power to "regulate" the siting of sanitary landfills through the implementation of zoning plans.[15] Their preemption argument therefore depends upon the existence of an implied legislative intent to preempt the rezoning at issue.
*498 Such an intent cannot be gleaned from the state environmental legislation. None of the regulations, nor the laws which authorize them, purport to displace local authority over land use planning to control the siting of sanitary landfills. See LSA-R.S. 30:2011(A)(1), 30:2011(C)(1)(c), 30:2152, and 30:2154(A)(3) and (B)(1). In fact, full compliance with local zoning ordinances is a pre-requisite to obtaining a solid waste disposal permit. La.Admin.Code 33:VII.1107.B.1.n provides:
Zoning of site. If zoned, note zone classification and by whom zoned. Include zoning affidavit and/or other documentation stating that proposed use does not violate existing land use requirements.
Nor are the statutory provisions in conflict with the existence of local authority to control land use for solid waste disposal sites through zoning. The focus of the state environmental legislation is on the eradication or minimalization of pollution. With regard to solid waste disposal, the sole focus of the Office of Solid and Hazardous Waste is to regulate "solid waste disposal practices." LSA-R.S. 30:2152. Local land use planning through the implementation of zoning in no way interferes with the control or regulation of the process of disposing of solid waste from an engineering or geophysical viewpoint. While the engineering and geophysical aspects of solid waste disposal may be exclusively within the jurisdiction of the DEQ, the state's preemption of that field does not extend to "abridging of municipalities control over land use within its corporate boundaries." See City of Baton Rouge v. Hebert, 378 So.2d 144, 146 (La. App. 1st Cir.1979), writ denied, 380 So.2d 1210 (La.1980), in which the court held the state's preemption of the field of oil production and storage did not abridge a municipality's control over the siting of oil production and storage facilities within its boundaries through the exclusion of petroleum storage tanks by zoning ordinances. While a local municipality cannot set geological or engineering standards stricter than those established by the DEQ for the issuance of its permits, factors other than geological ones, such as those involving aesthetics, population density, and accessibility govern the selection of the landfill site, and these factors are the appropriate subject of local land use planning. See Sunny Farms Limited v. North Codorus Township, 81 Pa.Cmwlth. 371, 474 A.2d 56, 60 (1984).[16] Thus, one of the reasons given by the DEQ for rejecting BFI's application was BFI's non-compliance with local zoning laws, as reflected in the reclassification of the study area.

DECREE
For the reasons expressed in this opinion, we hold the decision of the Police Jury of Calcasieu Parish to down-zone the property at issue, thereby preventing expansion of the BFI landfill, was a valid exercise of police power. The opinion of the Third Circuit is reversed, and the judgment of the trial court reinstated.
REVERSED.
WATSON, J., joins the opinion but assigns additional concurring reasons.
WATSON, Justice, concurring.
I join in the thorough and careful analysis by the majority and concur only to emphasize the principle that great weight is accorded to the decision of the local governing body, here the police jury. Parish police juries have constitutional authority *499 to regulate zoning under Art. 6, § 17, of the Louisiana Constitution of 1974.[1] In zoning to protect the public safety, a local governmental subdivision has great discretion. Tiber Petroleum v. Parish of Jefferson, 391 So.2d 1178 (La.1980). Since zoning is a legislative function, a court may not substitute its opinion for that of the legislative body except where there is an abuse of discretion or excessive use of power. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975).
For these additional reasons, I respectfully concur.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] The owners of the two other contiguous tracts which were down-zoned are not parties to this lawsuit.
[2] In brief to this court, Palermo and BFI contest the validity of the enactment of the I-2R classification since, even if we were to find the down-zoning at issue invalid, they would still be precluded from expanding the landfill under the I-2R ordinance. Because we find the down zoning at issue valid, there is no need to address this argument.
[3] See discussion of Kirk v. Town of Westlake, infra, regarding the propriety of a zoning authority's consideration of public opinion.
[4] The court of appeal found Palermo justifiably believed the new I-2R classification, discussed in 1985, and adopted in 1988, would not apply to him, based on a discussion with his police juror in 1985. It quoted testimony from the 1985 Ways and Means Committee meeting which suggested those properties currently zoned I-2 would be "grandfathered in," since, "you can't go back and change what they already got?" 550 So.2d at 319. The quoted language suggests that property owners have vested property rights in existing zoning classifications. This implication is completely misleading. The only zoning cases in which vested rights are properly an issue are those in which the opponent of the ordinance has obtained a building permit, has begun construction, and has become liable for work and materials. Dunn v. Parish of Jefferson, 256 So.2d 664, 667 (La.App. 4 Cir.), writ denied, 260 La. 1137, 258 So.2d 382 (1972). Presumably, it would be possible for a zoning authority to "grandfather in" certain properties when passing a new zoning ordinance, but such a measure is certainly not necessary. Plaintiffs' familiarity, BFI's in particular, with the changeability of zoning classifications, belies any assertion of justifiable reliance on assumed or implied vested rights. Furthermore, any reliance by Palermo and Nelson cannot be considered detrimental, since neither has expended funds toward the landfill expansion project. See discussion, infra.
[5] See also, Beverly Bank v. Cook County, 157 Ill.App.3d 601, 109 Ill.Dec. 873, 510 N.E.2d 941 (1987), app. denied, 117 Ill.2d 541, 115 Ill.Dec. 398, 517 N.E.2d 1084 (1987), in which the court stated:

Estoppel may not be invoked where it would operate to defeat the effectiveness of a policy adopted to protect the public. Here, the sanitary landfill site clearly affects environmental standards and thus the health, safety, and welfare of the public. And the trial court upheld the county's decision that the subject property is not a suitable location for the landfill. Id. 109 Ill.Dec. at 877, 510 N.E.2d at 945.
[6] In Lauritsen v. City of New Orleans, 503 So.2d 580 (La.App. 4 Cir.1987), the court relied upon Dufau in placing the burden of proof upon the proponent of an ordinance which constituted spot zoning. As noted, infra, Dufau is an anomaly. It represents a deviation from well established principles of law in Louisiana and we expressly decline to follow its purported "jurisprudential guidelines" for zoning reclassifications. Additionally, the court in Lauritsen purported to rely upon the guidelines set forth in Sears Roebuck & Company, infra, for review of spot zoning decisions. The court in Sears did not apply the burden of proof set forth in Dufau, but stated: "The burden is always upon the one assailing the zoning ordinance to overcome [the] presumption of validity." Id. at 780. In Hunters Grove v. Calcasieu Parish Police Jury, 422 So.2d 673 (La.App. 3d Cir.1982), the court declined to apply the change or mistake rule, although it was mentioned.
[7] The state of Maryland is the chief exponent of the change or mistake rule, but the vast majority of jurisdictions have not adopted the rule, and most of those which have considered it have rejected it. See Wisniewski v. Zoning Board of City of Stamford, 6 Conn.App. 666, 506 A.2d 1092 (1986), Citizens Association of Georgetown v. District of Columbia, 402 A.2d 36 (D.C. App.1979), Dye v. City of Phoenix, 25 Ariz.App. 193, 542 P.2d 31 (1975), Willdel Realty, Inc. v. New Castle County, 281 A.2d 612 (Del.1971), and Lum Yip Kee Ltd. v. City of Honolulu, 767 P.2d 815, 823 n. 14 (Ha.1989). In rejecting the doctrine, these courts noted that the Maryland change or mistake rule was in the minority and was followed in but a few states.
[8] BFI did not have any vested rights in the I-2 zoning classification of the Palermo property. See note 4.
[9] See discussion of Lauritsen, supra, and Hunters Grove, supra, at footnote 5.
[10] The Nelsons rest their argument on equal protection grounds rather than due process grounds. This argument is completely meritless, since all property in the study area which was zoned I-2 was rezoned I-1. Thus all landowners similarly situated were treated alike. Aside from the Nelson and Palermo tracts, there were two other tracts adjacent to and contiguous with the landfill site, which were downzoned. Nelson's contention that his property should not have been included in the Reclassification Study and subsequent down-zoning is the equivalent of arguing he should have been treated differently from Palermo, thereby giving Palermo an equal protection claim.
[11] The court of appeal relied heavily upon its decision in Hunters Grove Homeowners Assoc. v. Calcasieu Parish Police Jury, 422 So.2d 673 (La. App. 3d Cir.1982). It found Dufau inapplicable in Hunters Grove because the plaintiffs in Hunters Grove had no vested property interest in the property rezoned. They were merely owners of neighboring property who opposed the rezoning at issue. This distinction is irrelevant insofar as it relates to the burden of proof in zoning cases. As already noted, a presumption of validity attaches to all zoning ordinances, and the party opposing the ordinance bears the burden of proving its invalidity, whether he owns the property rezoned or not. Thus the Hunters Grove court was correct in not applying the change or mistake rule of Dufau, although its reason therefor was inapposite. In the zoning cases cited herein, the opponents of the zoning ordinances were not always the owners of the property rezoned. This fact had no bearing on the burden of proof imposed by the courts of this state.

Apparently, the court of appeal found that since the evidence adduced in Hunters Grove would have been relevant under the change or mistake rule, Hunters Grove supported use of the rule. The evidence in Hunters Grove regarding change in economic conditions, change in the value of property surrounding the rezoned area, and testimony of the owner of the rezoned property relating to his inability to continue farming due to the increased residential development cannot be characterized as support for use of the "change or mistake" rule. While such evidence might be appropriate in a jurisdiction using the change or mistake rule, it might also be appropriate for use in the determination of whether the zoning decision was arbitrary and capricious. The flexibility of the definition of relevant evidence precludes an argument that evidence which is relevant under one set of judicial guidelines is necessarily irrelevant under another. See LSA-C.E. art. 401.
The court of appeal also cited Kirk v. Town of Westlake, 373 So.2d 601 (La.App. 3d Cir. 1979), as authority for its use of the Dufau "guidelines," stating it "applied similar reasoning" in Kirk. We find no such similar reasoning in Kirk. There, the plaintiff sought to compel through mandamus a change in the existing zoning of his property. After duly noting the presumption of validity attached to zoning ordinances, the court found, "Plaintiffs burden ... was not only to show that his requested change would be a reasonable one, but also that the municipality's classification of the property was unreasonable." Plaintiff, as the party opposing the action of the municipal authority, was properly cast with the burden of proof.
The court of appeal quoted from Paternostro v. Parish of Jefferson, supra, as additional support for its application of the "change or mistake" rule. The quoted language, when considered in the context of the Paternostro opinion, provides no support whatsoever for the court of appeal's use of the "change or mistake" rule of Dufau. The quoted language from Paternostro is found in a discussion of the difference between an application for a special permit or a conditional use permit and an application requesting a change in the existing zoning under a comprehensive zoning ordinance. The Paternostro court cited Dufau as authority for the "change or mistake" language, but did not set forth or utilize the "change or mistake" rule. The plaintiffs in Paternostro had requested a rezoning of their property, and the court found, "For the plaintiffs to prevail they must show not merely that the decision of the defendants was wrong but that it was arbitrary, unreasonable or capricious, and we cannot find that plaintiffs have borne their burden of proof in this connection." (emphasis added). Id. at 331.
[12] While plaintiffs' expert witnesses found the Parish's Reclassification Study inadequate for lack of analysis, we have already noted that the evidence adduced before the governing body need not be sufficient to support a zoning decision if the decision is supported by evidence adduced at trial. It is the resulting legislation, rather than a zoning authority's deliberations, which is subject to judicial review. The competency of the Reclassification Study is therefore irrelevant.
[13] As noted by the Illinois Supreme Court in Cosmopolitan National Bank v. County of Cook, 103 Ill.2d 302, 82 Ill.Dec. 649, 655, 469 N.E.2d 183, 189 (1984), "it does not take an expert to establish that garbage has an unpleasant odor." In its brief, BFI quotes language from the appellate opinion in this case, which was overruled by the Illinois Supreme Court. In upholding the decision of the local zoning authority of Richton park to disallow Sexton a permit for the expansion of a sanitary landfill, the supreme court noted:

A homeowner ought to be able to sit in his home or his yard undisturbed by the ugly sight of burning methane-gas flares or the equally ugly sight of litter on his own and neighboring properties, the health hazards caused by rodents which invade his property despite his best efforts to keep his own property clean, the increased traffic in a quiet residential area which creates an annoyance to him and a real danger to his children, and the unavoidable unpleasant odors which accompany even the best maintained sanitary landfill. Sexton's employees may become accustomed to the odors because they "earn their living that way," but the law should not force citizens of Richton Park to become accustomed to them. Id. 82 Ill.Dec. at 656, 469 N.E.2d at 190.
The court also noted "the known dangers associated with landfills at the current state of the art," which included possible contamination of groundwater, methane gas, rodents, and odors. Id. 82 Ill.Dec. at 659, 469 N.E.2d at 193.
[14] While we question the applicability of Act 196 of 1960, since it is paralleled by a later enactment, LSA-R.S. 33:4726, we address plaintiffs' arguments under the authority cited by them since the argument fails under both the Act and the revised statute.
[15] Both BFI and Nelson rely on this court's decision in Rollins Environmental Services v. Iberville Parish, 371 So.2d 1127 (La.1979) as the sole support for this argument. There, the majority found the locality's attempt to regulate hazardous waste disposal was preempted by state law because the Police Jury was vested with only those powers conferred upon it by state law, and it lacked the "inherent power to regulate and control the disposal of hazardous waste for the protection of the health and welfare of its citizens." Id. at 1130-31. We held the regulation at issue was not authorized by LSA-R.S. 33:1236(31) because it was a hazardous waste regulation, and this statute only applied to non-hazardous waste.

The rezoning at issue applies to non-hazardous waste, and it is expressly authorized by LSA-R.S. 33:1236(31). Moreover, since Rollins, LSA-R.S. 33:1236(31) has been amended, and even with regard to hazardous waste, parishes and municipalities are given the power to regulate "the initial siting of facilities pursuant to general land use planning, zoning, or solid waste disposal ordinances."
[16] See also, Resource Conservation Management, Inc. v. Board of Supervisors of Prince William County, 238 Va. 15, 380 S.E.2d 879 (1989), holding the Virginia Waste Management Act did not preempt local land use regulation manifested in ordinance prohibiting operation of privately owned and operated landfill because there was no evidence that the legislature intended to so invade the field of solid waste management as to exclude localities from exercising their usual control in the field of land use when the two fields overlapped; City of Rochester Hills v. Six Star Limited, Inc., 167 Mich.App. 703, 423 N.W.2d 322 (1988), holding that local zoning ordinances were not preempted by Solid Waste Management Act; Township of Plymouth v. County of Montgomery, 109 Pa.Cmwlth. 200, 531 A.2d 49 (1987), holding the Solid Waste Management Act and administrative implementation of it by regulation did not preempt local zoning ordinances governing location of county's refuse disposal plant.
[1] Art. 6, § 17, Louisiana Constitution of 1974 states:

Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.