LABORDE, Judge.
In this case, appellant, Willie Windham, appeals the trial court’s award to appellee, New England Mutual Life Insurance Company, a credit for social security and worker’s compensation benefits as well as reimbursement for overpayment of disability benefits. Finding no error on the part of the trial court, we affirm.
FACTS
In March of 1982, Willie Windham suffered a heart attack. He was denied social security benefits on September 16, 1982. In February of 1983, Windham’s then employer, Houston Fishing Tools Company and its worker’s compensation carrier, Aet-na Casualty and Surety Company, filed a petition for declaratory judgment asking the court to determine whether or not they owed Willie Windham worker’s compensation benefits.
In June of 1985, a judgment was rendered against Houston Fishing Tools and Aetna in favor of Windham declaring him to be totally and permanently disabled from all forms of gainful employment and awarded him worker’s compensation benefits in the amount of $183.00 per week. Thereafter, in the same suit, Windham filed *1226 a pleading entitled “Second Supplemental and Amending Reconventional Demand”, asserting a claim against New England Mutual Life Insurance Company (New England) for payment of disability benefits under a policy of disability insurance issued by New England which provided coverage to the employees of Houston Fishing Tools.
Windham and New England entered into what was entitled a “Consent Judgment” on April 1, 1987, which by its terms put an end to all known disputes existing between them as of March 9, 1987. This agreement provided that New England would pay monthly disability benefits in the amount of $1,007.00 to Windham. This provision reflected a recognition by both parties that the disability policy specifically provided an offset for any worker’s compensation benefits received by Windham. The judgment further provided: “If Willie G. Windham’s workman’s compensation judgment is can-celled, such that New England is entitled to a credit, then the insurer shall be liable for monthly benefits of $1,800.00 per month.”
Paragraph (d) of the consent judgment provided that all policy provisions not in direct conflict with the consent judgment would remain in effect. The parties agreed in paragraph (f) of the consent judgment that New England had a right to file a summary proceeding to obtain an order modifying the consent judgment when Windham’s disability status changed or when circumstances existed such that the benefits are no longer payable under the policy.
On October 4, 1988, Windham, his employer, Houston Fishing Tools and its worker’s compensation insurer, Aetna, filed a “Joint Petition and Compromise Agreement and Structured Settlement agreement” in which Windham gave up his right to receive weekly indemnity benefits for permanent and total disability, as provided for in the previous judgment rendered in his favor, in exchange for a lump sum payment of $40,000.00 payable immediately and lump sum payments following of $10,-000.00 on December 20, 1993 and $15,-000.00 on December 20, 1998. This agreement provided that if Windham were dead in 1993 or 1998, the remaining lump sum payments would still be payable to his estate. This compromise settlement was approved by the court, and in connection with that settlement agreement, a satisfaction of judgment was entered into the record directing the court to cancel and erase the previous worker’s compensation judgment rendered against Houston Fishing Tools and Aetna.
In June of 1988, Windham was awarded social security disability benefits in the primary amount of $650.60 monthly. The award was retroactive to September of 1982. Windham received a check in the amount of $36,361.00 for past social security benefits from September, 1982 through June of 1988. From June of 1988, he has been receiving a primary benefit amount of $650.60 per month.
In June of 1990, New England wrote to Windham’s attorney requesting Windham fill out an up-dated employee statement of continuance of disability form and requested Windham supply information to New England concerning whether or not he was receiving social security benefits. Wind-ham’s attorney wrote to New England and told them his client was refusing to supply New England with any information as to whether or not he was receiving social security benefits. He also contended that New England was no longer entitled to take the worker’s compensation offset because the worker’s compensation judgment had been cancelled.
New England filed a motion with the court to compel Windham to provide information on his receipt of social security benefits and sought a modification of the judgment to recognize New England’s right to reduce Windham’s benefits pursuant to a social security offset provision contained in the policy. It further sought a modification of the judgment to allow it to recover from Windham any overpayment of disability benefits it may have made to Windham because of his past receipt of social security benefits. New England also requested the court to determine whether or not New England could continue to take the work *1227 er’s compensation offset as provided for in the judgment.
On September 30, 1991, a hearing was held on the motion to modify the consent judgment filed by New England. Wind-ham produced documents indicating he was receiving social security benefits and that as of the day of the hearing, he received over $70,000.00 in Social Security benefits. The trial court rendered judgment in favor of New England, recognizing its continued right to reduce any monthly disability benefits owed to Windham under the policy by $793.00 which represented the worker’s compensation offset subject to the condition that New England could deduct from the benefits owed to Windham $793.00 per month up to the total amount of $40,000.00 which was the initial amount Windham received pursuant to a lump sum settlement. The trial court also ruled that New England’s right to take the worker’s compensation offset would be suspended until Wind-ham received the other lump sum payments as per the worker’s compensation settlement. Thereafter, New England would be entitled to deduct the $793.00 per month worker’s compensation offset until it exhausted the amounts of the lump sums Windham would receive in 1993 and 1998.
The trial court further rendered judgment in favor of New England against Windham in the amount of $72,867.20, which represented the amount of past social security benefits received by Windham from September, 1982 through December, 1991, allowing New England to deduct a monthly amount of $650.00 from monthly disability benefits owed to Windham in order to recover the amount of the overpayment made to Windham. The court also recognized New England’s right to take an additional offset of $650.00 per month as a social security offset from January 1, 1992 for any month thereafter Windham received social security benefits and received disability benefits under the policy. Wind-ham filed a motion for a new trial which was denied and then filed this appeal. New England answered the appeal and requested damages for a frivolous appeal.
WORKER’S COMPENSATION OFFSET
Windham asserts the trial court erred in finding New England was entitled to continue to take the worker’s compensation offset provided for in the Consent Judgment. Windham argues the only situation where his benefits would be terminated would be when he no longer experienced a permanent disability or when he turned the age of sixty-five as set forth in the Consent Judgment. He asserts that since there was judgment cancelling the worker’s compensation claim on August 5, 1988, then, as of that date, New England would no longer have been entitled to take the compensation offset and would have had to reinstate the $1,800.00 per month in benefits. Windham asserts the primary purpose of the worker’s compensation settlement was to provide for his future medical situation and not as disability income.
At the time the Consent Judgment was entered into between New England and Windham, Windham was receiving worker’s compensation benefits in the amount of $793.00 pursuant to a judgment of the trial court which declared him to be permanently and totally disabled. The Consent Judgment provided that if Windham’s compensation judgment is cancelled such that New England is no longer entitled to a credit then New England would be liable for benefits of $1,800.00. The Consent Judgment specifically provided that “All policy provisions not in direct conflict with this consent judgment shall remain in effect ... ”.
The New England policy under which Windham was receiving benefits provided:
Part B — Benefit Offset
The amount of monthly benefit established under Part A (the formula for determining the maximum amount of benefits) will be reduced by an amount equal to the sum of any payments specified in the following subparagraph to which the employee is or becomes entitled, or to which the employee would be entitled if he made the prescribed application; ...
*1228 2) Any Disability Income Benefits provided under any Worker’s Compensation Law ...
[[Image here]]
Whenever the Worker’s Compensation Disability Income payment is made in a single lump sum, the monthly benefits will be reduced by an amount equal to the monthly equivalent of the payment to which the employee would have been entitled, had there been no lump sum payment, but not to exceed in total the amount of the lump sum payment.
Reading this policy provision and the Consent Judgment together, New England and Windham intended New England to take credit for the worker’s compensation benefits Windham was to receive under the judgment which had been previously rendered in his favor. The specific language of the Consent Judgment provides that the offset was to end when the cancellation of the worker’s compensation judgement was of a type that New England would no longer be entitled to a credit under the policy because Windham would no longer be receiving worker’s compensation benefits. Windham compromised his right to receive weekly worker’s compensation benefits in exchange for a lump sum settlement. This is not the type of a “cancellation” contemplated under the Consent Judgment such that New England was no longer entitled to the credit as provided for by the specific terms of the Consent Judgment because Windham received a lump sum as a substitute for his future weekly compensation benefits. The provisions of the New England policy allow New England to take an offset for worker’s compensation benefits even if the insured chooses to be paid in a lump sum.
Furthermore, we find the lump sum of $65,000.00 awarded to Windham in the worker’s compensation settlement was not in settlement of his future medical expenses as Windham contends but was disability income. A careful review of the joint petition of the worker’s compensation settlement shows that the right Windham compromised was the right to receive weekly indemnity benefits for life because of a judgment previously rendered declaring him to be permanently and totally disabled. Thus, the trial court did not err in finding New England was entitled to continue to take an offset for the value of the future worker’s compensation benefits Windham received in the worker’s compensation settlement. Therefore, this assignment of error lacks merit.
SOCIAL SECURITY DISABILITY INCOME OFFSET
Windham argues the trial court erred in allowing New England an offset or credit of $650.00 per month for any future social security disability income Windham received as well as finding New England was entitled to judgment of $72,867.00 for overpayment of disability benefits to Windham because of his receipt of social security benefits. He asserts he was receiving the social security benefits at the time the Consent Judgment was entered into and as the Consent Judgment did not address this issue, the parties had considered the social security benefits and reached a compromise. He also maintains there is no language in the policy that entitles New England to a reimbursement. He further alleges New England should be estopped from recovering reimbursement of the $72,-867.20 because he alleges New England did nothing since the Consent Judgment in 1987 to seek reimbursement of the social security offset for the overpaid benefits it may have made.
The Consent Judgment was entered into on April 1, 1987. Windham’s social security benefits were not awarded to him until June of 1988. Therefore Windham was not, as he contends, receiving social security benefits at the time the Consent Judgment was entered into. The Consent Judgment stated that it was putting an end to only those disputes between the parties existing as of March, 1987 and that all provisions of the policy, not in conflict with the terms of the Consent Judgment, would remain in effect. The policy specifically provides that New England has a right to offset any monthly benefits owed to Wind-ham by the amount of the social security *1229 disability benefits received by Windham. Therefore, the social security benefits were not “compromised” in the Consent Judgment as Windham argues.
Windham asserts there is no language in the New England policy that entitles New England to a reimbursement. We disagree. The policy clearly states in its Schedule of Benefits, Part I, Part B: “If, after New England Life has made one or more payments, it is determined that the amount of benefits from other sources is either greater or less than the amount used in determining the benefit amount paid, any such prior benefit payments will be retroactively adjusted.” We find this language supports the trial court’s award of past paid benefits to New England.
We also find Windham’s argument that New England is estopped from recovering the past benefits it paid to Windham to be without merit. It is well settled that where matters at issue are controlled by positive written law “equitable considerations and estoppel cannot be permitted to prevail”. Palermo Land Company v. Planning Commission, 561 So.2d 482 (La.1990). The Consent Judgment and insurance policy govern the dispute between these two parties. It is improper to resort to equitable considerations while there is an unambiguous contract setting forth the rights and duties between these two parties. The insurance contract clearly sets forth New England’s right to the reimbursement of $72,867.20. Therefore, we find the trial court did not err in finding New England was entitled to a credit of $650.60 per month for any future social security disability income Windham received as well as finding New England was entitled to judgment of $72,867.00 for overpayment of disability benefits to Windham because of his receipt of social security benefits.
FRIVOLOUS APPEAL
New England answered this appeal and requested damages for a frivolous appeal. We deny any damages for frivolous appeal as this appeal involved interpretation of a contract and we find Windham had a legitimate, good faith argument.
DECREE
For the reasons assigned above, the judgment appealed is affirmed. Costs of this appeal are assessed against appellant, Willie G. Windham.
AFFIRMED.