650 So.2d 315 (1995)
Ferdinand CERRUTI and Carl G. Joseph
v.
The PARISH OF JEFFERSON and the Jefferson Parish Council.
No. 94-CA-608.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1995.
*316 David L. Colvin, Asst. Dist. Atty. and Anthony Messina, Parish Atty., Gretna, for defendants/appellants the Parish of Jefferson and the Jefferson Parish Council.
W. Matthew Campbell, New Orleans, for plaintiffs/appellees Ferdinand Cerruti and Carl G. Joseph.
Before KLIEBERT, GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Defendants, Parish of Jefferson and the Jefferson Parish Council, appeal from a judgment reversing the council's decision to deny a resubdivision of a 100 foot lot by plaintiffs, Ferdinand Cerruti, and Carl Joseph. Cerruti owns the lot and Joseph is the prospective purchaser. We reverse, finding that the council neither abused its discretion nor acted arbitrarily or capriciously in denying the resubdivision request.
In 1976, Cerruti acquired a lot in the Bridgedale Subdivision of Metairie, Louisiana on Butternut Street with dimensions of 100 feet by 150 feet. The property was zoned R-1A, which is single family, residential. At the time the subdivision was created, all of the property on Butternut had 100 foot frontages. In the years 1969 to 1973, seven resubdivision requests similar to the one requested herein were granted. The surrounding neighborhood streets have mostly 50-60 foot lots or less. Otherwise, 100 foot frontages predominate on Butternut Street.
In 1985 or 1986, Cerruti decided to sell his property, but was unable to because of its size. The asking price varied, but in 1991, Cerruti signed a purchase agreement with Joseph for $86,000, on the condition that it could be subdivided into two lots with 50 foot frontages. As a result, Joseph spoke to several parish planning officials and concluded there would be no problem because the resubdivided lots would meet the technical requirements. On August 22, 1991, plaintiffs filed an application for resubdivision. The initial application was investigated by the Jefferson Parish Planning Department. A public hearing was held with the majority of input being against the resubdivision. In September, 1991, the Bridgedale Civic Improvement Association wrote a letter to the Jefferson Parish Planning and Advisory Board expressing their disapproval of the resubdivision. However, the planning department submitted a report approving the resubdivision because it technically met the zoning requirements. The application was then presented to the Jefferson Parish Planning Advisory Committee which recommended denial based on the fact that the resubdivision did not meet the "neighborhood norm."
On November 20, 1991, the matter was brought before the parish council. The council reviewed the report and the two opposing recommendations. It deferred its decision and ordered the planning department to conduct a zoning study of the street. The study was to include:
"... the lots that fully or partially front on Butternut Street and all lots that lie within one hundred (100) feet from Butternut Street in the area generally bounded by Argonne Street to the north, Persimmon Avenue to the east, N. Park Drive to the south and Apple Street to the west as extended northward to Argonne Street with a view of reclassifying said area from its current zoning classification of R-1A, Single Family Residential District to R-1C, Rural Residential District."
The council deferred action on plaintiffs' resubdivision request on one other occasion before receiving the planning department's report on the re-zoning.
The zoning report was submitted to the council for action on June 3, 1992. The council took the matter out of order before ruling on plaintiffs' application. Both the planning department and the advisory board recommended implementation of the zoning change. Following a vote to change the zoning to R-C1 (which requires lots in the zoning area to have a minimum of 70 feet across the front), the zoning change was passed by the council. The council next took up the resubdivision matter. Because of the new zoning, the planning department and advisory board representatives recommended denial. The council then voted to deny the application. *317 In its decision to deny, the council considered the recommendations, the neighborhood feelings on the matter, investigation by the area's representative and other factors.
Plaintiffs thereafter filed a petition for review of the decision in the district court against the parish and the parish council. The case was tried on November 8, 1993. On March 15, 1994, the trial judge rendered a judgment reversing the action of the council in denying the resubdivision application and ordering the council to grant the request. He vacated the zoning change only insofar as it affected plaintiffs' property and ordered the property to be zoned back to its original zoning classification of R-1A.
On appeal, defendants assert that the trial judge erred in reversing the council's decision. They contend that the council's decision as a legislative body cannot be reversed or vacated if they had reasonable grounds to deny the resubdivision request and to rezone the property. Defendants also contend that plaintiffs were not denied "due process," that the council did not abuse its discretion or excessively use its legislative power in denying the subdivision request and in rezoning the property. Finally, they contend that plaintiffs failed to meet their "extraordinary" burden to overcome the presumption of validity of a legislative act.
La.R.S. 33:101.1 provides that the act of approving or disapproving a subdivision plat is a legislative function involving the exercise of legislative discretion by the Planning Commission. The statute further states that it is subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, excessive use of power granted by the statute or denial of the right of due process. La.R.S. 33:4721 grants municipalities the right to impose zoning regulations subject to judicial review on the same grounds as R.S. 33:101.1.
At the time that plaintiffs instituted the resubdivision proceedings, the Jefferson Parish Code of Ordinances, Chapter 33 (Subdivisions) Sec. 33-14(a)12 provided that the council has the authority to use its discretion in granting or denying subdivision requests where the property is not in conformity with the existing conditions in the immediate area.
In Palermo Land Co., v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 490 (La.1990), the Louisiana Supreme Court stated that all legislative acts are presumed to be valid and the burden rests on the person challenging the act to overcome the presumption. That burden, the court stated, is extraordinary and the courts will not substitute their judgment for that of the legislative authority. Id. at 490, 492; Four States Realty Co., v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975); See also: Save Our Neighborhood v. St. John the Baptist Parish, 592 So.2d 908 (La.App. 5th Cir.1991), writ denied 594 So.2d 892 (La.1992).
In considering the question of whether an ordinance is valid, the court must ask whether the decision bears so little relationship to public safety, health, comfort or general welfare as to render it arbitrary and capricious. See: Palermo at 493. The legal analysis is the same whether the issue involves resubdivision or rezoning or both. See: Bourbon Country Estates v. St. James Parish, 611 so.2d 180, 182 (La.App. 5th Circuit 1992), writ denied 613 So.2d 997 (La. 1992). However, as stated in State ex rel. Civello, 154 La. 271, 97 So. 440, 444 (1923):
"It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind ...
We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballotnot the courts."
See: Palermo at 491. (Emphasis added)
In this case, plaintiffs assert that the council's actions were an abuse of discretion, an excessive use of authority and/or bear no relation to the public safety, health, comfort or general welfare and thus were arbitrary and capricious. They contend that the council's action in rezoning the property is designed to affect a few homeowners because *318 the majority of lots in the entire Bridgedale Subdivision have frontages of sixty feet or less. Plaintiffs argue that their application was presented under the old ordinance and the council should have considered it at that time, using the criteria of "immediate area." They assert that the criteria of "neighborhood norm" did not become an official criteria until 1993, months after the rezoning and over one year after their application. They argue that the council denied them due process by delaying action until and after the rezoning was passed. Further, plaintiffs argue that the decision at that time was invalid because by the terms of the rezoning ordinance, it was not to take effect for 10 days after June 3, 1992, the date of the council meeting when the change was passed. In addition, they assert that the zoning should not have been changed relative to their lot because the immediate area in which the lot is located is largely made up of smaller lots. The trial judge agreed with the arguments in his reasons for judgment.
Defendants argued that the testimony shows that the council rezoned the property because of various considerations, all within their discretion, and did not violate the rights of the plaintiffs. We agree.
The council representative for the area, Edmond Muniz, stated that the majority of landowners wanted the change in order to maintain property values, resist overcrowding and because it was the original intent of the development that Butternut be a primary entrance route with large lots. He testified that there was considerable opposition to the resubdivision and everyone on the street supported the rezoning and denial of the resubdivision. He explained that the council should never have allowed resubdividing on that street because it was intended that the lots have one hundred foot frontages and the landowners expected that to remain the norm. He stated that the council considers the recommendations of the planning department and planning advisory board, but is not bound by the recommendations. He recognized that the planning department approved the resubdivision originally, however; he also noted that the department is limited to the technical aspects of the change and has no discretion. As testified to by the planning director, Philip Biondello, the planning department must make its recommendations purely on whether the request meets the technical requirements of the zoning law. At the time of the original application, the existing law required the planning department to approve a request if it complied with the "existing condition in the immediate area." For purposes of that analysis, the department checks the requirements for lot sizes, front and side footage, square footage, regulatory department requirements, set-offs, etc. using a smaller area than the study area provided by the council for zoning changes. At that time, there were no legal impediments to the resubdivision request, but once the council changed the zoning, the planning department had to recommend against the resubdivision because the resubdivided lots would no longer meet the zoning requirements.
The decision concerning the boundary lines for the zoning study was made by the council in its discretion. The entire street is affected by changes made to the properties located on it. We find no abuse of the council's discretion in drawing the zoning study boundaries in such as way as to include the property belonging to plaintiffs. Once made, the zoning study showed that the majority of lots on Butternut have larger than fifty foot fronts, although the area is surrounded by lots of 60 feet frontages or less. There is a cluster of smaller lots near plaintiffs' property, all of which originally had one hundred foot fronts, but which were subdivided in the late 1960s or early 1970s. It had been nearly twenty years since the last subdivision of one lot into two lots with fifty foot frontages had been granted.
The evidence showed that even the adjacent property owners opposed the lot size change, including one nearby small lot owner who testified at trial. Plaintiffs clearly had no neighborhood support.
We agree with the council that it is not restricted to the technical considerations in making its decisions in these matters, but instead may consider other factors affecting the area. Consequently, there is no guarantee that the council would have approved the *319 resubdivision when it was first reviewed. While the technical criteria may have been met in 1991 when plaintiffs applied for the resubdivision, even then, the same factors considered by the council in 1992 mitigated against the lot size change. Landowners were spoken to and public hearings on the matter were held in which the majority were in opposition to the resubdivision for the reasons of maintaining property values, reducing congestion and maintaining the expectations of the owners who purchased the large lots believing nearby lots would not chopped up into smaller, less attractive spaces.
We have reviewed the evidence and law applicable to this case and conclude that the council was not arbitrary and capricious, neither did it use its power excessively nor did it violate plaintiffs' right to due process. The actions taken by the council were based on reasonable considerations. Thus, we find that the trial judge erred in reversing the decision of the council to deny the resubdivision request and in rezoning the area in which plaintiffs' property is located.
Accordingly, we hereby reverse the judgment of the trial court and reinstate the decision of the Jefferson Parish Council changing the zoning of the area in question to R-1C and in denying the resubdivision application submitted by plaintiffs for lot ten of the Bridgedale Subdivision.
Plaintiffs are to pay all costs of appeal.
REVERSED.