786 So.2d 757 (2001)
MAYNARD BATTURE VENTURE, A Louisiana Partnership in Commendam and George Maynard,
v.
PARISH OF JEFFERSON.
No. 00-CA-1669.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
Writ Denied June 29, 2001.
*758 Jack E. Morris, Metairie, LA, and Randall J. Meyer, New Orleans, LA, Counsels for plaintiffs-appellants.
Thomas G. Wilkinson, Harahan, LA, and Robert T. DeFrancesch, LaPlace, LA, and Paul J. Mirabile, L. Marlene Quarles, Middleberg Riddle & Gianna, New Orleans, LA, Counsels for defendant-appellee.
Court composed of Judges GOTHARD, McMANUS and JAMES C. GULOTTA, Pro Tempore.
McMANUS, Judge.
The question presented in this case is whether the Jefferson Parish Council arbitrarily and capriciously refused to re-zone batture property to an M-2 industrial classification as requested by the Plaintiff herein, Mr. George Maynard. For the reasons that follow, we uphold the Jefferson Parish Council's decision to deny Mr. Maynard's re-zoning application.

STATEMENT OF THE CASE
On January 27, 1993, George Maynard, acting on behalf of Maynard Batture Venture[1], applied for a change in the zoning classification of property he owns in the River Ridge area. The property in question is a batture located in the River Ridge area. The Maynard Batture is presently zoned under the Jefferson Parish Comprehensive Zoning Ordinance as R-1A, singlefamily residential. In his application Maynard requested that the property be rezoned to M-2, an industrial classification. The Jefferson Parish Council denied Maynard's request to have the property rezoned.
On June 24, 1993, Maynard filed a Petition for Damages in trial court alleging that the Jefferson Parish Council abused its discretion and acted arbitrarily and capriciously in refusing to grant his request for re-zoning. The trial court entered a judgment in favor of the Parish of Jefferson, upholding the decision of the Jefferson Parish Council. From this judgment, Maynard has appealed.

FACTS
The history behind this Batture property is as unique as the Batture itself. The Maynard Batture is a stretch of land that spans 8,400 feet along the Mississippi River in the River Ridge/Harahan area. It runs along the only part of the levee in Jefferson Parish where there is no river road on the land side of the levee. Consequently, the adjoining residential properties are much closer to the Batture without a river road to serve as a buffer. The Batture is also inundated on an annual basis. When the water gets to its ordinary high water mark in Spring, it comes up to the toe of the levee itself.[2]
George Maynard and his partnership, Maynard Batture Venture, are the owners of the Batture by virtue of several purchases made in 1967 and 1968.[3] The Batture *759 is zoned R-1A, single-family residential, and Mr. Maynard knew it had this zoning classification when he purchased the Batture property. In 1981, Mr. Maynard transferred to Manyard Batture Venture all of the batture property that he acquired in 1967 and 1968.
Mr. Maynard used the Batture to fleet barges. The fleeting or "mooring" of barges is basically a method of securing barges to the banks of rivers. The barges are moored to lines leading from concrete structures known as "deadmen." While moored to the bank or batture, the barges are usually awaiting further loading or unloading at another point on the river.
In 1984, The United States Army Corps of Engineers removed the deadmen cables that were located on the Maynard Batture. The Corps of Engineers then installed revetments on the river bank to prevent further erosion. The revetments effectively prevented Mr. Maynard from continuing his fleeting operations because the Corps of Engineers rules prohibited any further fleeting operations with deadmen and cables after revetments were in place. To continue to fleet barges, Maynard would have to install the so-called Dolphin system at a cost of approximately one million dollars.
In 1993, Maynard applied to the Jefferson Parish Council for a re-zoning of the Batture to an M-2 industrial classification. M-2 is a more liberal zoning designation, permitting a wide variety of industrial land uses. The Council denied Maynard's request, and Mr. Maynard then sued the Parish. Maynard alleged that the Parish's refusal to re-zone the Batture was in bad faith, and amounted to an irrational decision intended to keep the property out of commerce.
After a two-week trial, the trial court upheld the decision of the Jefferson Parish Council. Maynard filed the present appeal from the trial court's judgment in favor of the Parish of Jefferson.

DISCUSSION
In Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990), the Louisiana Supreme Court held that a challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the existing zoning legislation is arbitrary and capricious. The Court went on to explain that reviewing courts cannot substitute their judgment for that of the legislative authority. A parish council's zoning decision is presumptively valid. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974). A landowner challenging an existing zoning classification must show that it bears no relation to health, safety or the public's general welfare, such that the classification is arbitrary and capricious. Palermo, 561 So.2d at 493; Cerruti v. Parish of Jefferson, 94-608 (La.App. 5 Cir. 1/18/95), 650 So.2d 315.
This exact Batture was the subject of another litigation thirty years ago. In Parish of Jefferson v. Universal Fleeting Company, Inc., 234 So.2d 88 (La.App. 4th Cir.1970), the Parish sought to enjoin the commercial use of the Batture because barge fleeting violated the R-1A permitted land uses in the Comprehensive Zoning Ordinance. At that time, Universal Fleeting Company leased the property from the prior owner of the Batture, Calco. George Maynard later purchased this Batture property from Calco, and Maynard was also named a defendant in the Parish's lawsuit.
The issue in Universal Fleeting was whether the Parish had the authority through zoning classifications to prevent the mooring of barges on the banks of a *760 navigable river. Pursuant to Louisiana Civil Code Article 455, the banks of a navigable waterway are subject to a servitude of public use for uses incidental to navigation. The Fourth Circuit held that to the extent the Parish's zoning classification prevents uses incidental to navigation on the banks of a navigable waterway, it is contrary to the Louisiana Civil Code.
However, this opinion was expressly limited to the use of the Batture disclosed by the record, which was barge fleeting. Universal Fleeting, 234 So.2d at 92. Universal Fleeting did not order the re-zoning of the Batture from R-1A, nor did it require that the Parish grant Mr. Maynard or any of his successors their choice of zoning designations. Universal Fleeting specifically held that the R-1A zoning classification for the Batture was invalid and unreasonable to the extent it prohibited uses of the Batture allowed in the Louisiana Civil Code.
Maynard argues that the Parish is trying to prevent commercial operations on the Batture. In support of this position, Maynard alleges that the land uses permitted in an R-1A zone do not permit any economically viable use of the Batture. Maynard points out that even though he is allowed to fleet barges because of the Universal Fleeting decision, he wants the Batture re-zoned from R-1A so he can lease it or obtain loans for improvements. He claims that potential lessees are concerned about the residential classification and the potential for Parish regulatory activity.
Maynard acknowledges that it was ultimately the Army Corps of Engineers that halted his fleeting operations through the installation of the revetments. However, Maynard contends that because of the 1A classification he is unable to obtain a loan to purchase a Dolphin system that would enable him to resume fleeting despite the revetments. Even with the Dolphin system, according to Maynard, potential lessees of the property are skeptical of conducting fleeting operations with the current zoning of the Batture.
The Parish of Jefferson argues that Maynard is already entitled to fleet barges on this Batture pursuant to the Universal Fleeting decision. The Parish asserts that there have been no attempts to stop or regulate Maynard's commercial use of the Batture since 1976, which was the date of the last regulatory act by the Parish to enforce the R-1A classification. As pointed out above, the revetments installed by the Army Corps of Engineers terminated Maynard's fleeting activities. A Dolphin system would enable Maynard to continue fleeting, but it would cost approximately one million dollars. According to the Parish, Maynard does not want to do this because of the cost. Rather, Maynard wants the property re-zoned to a classification that would be so onerous on the adjacent landowners that the Parish would be effectively compelled to purchase the Batture from him.
We find it necessary for purposes of this opinion to clarify the exact issue presented in this case. The issue here is not whether the Batture's R-1A zoning classification is arbitrary, capricious or irrational. Furthermore, our inquiry is not to decide whether the Parish has acted arbitrarily and capriciously in refusing to re-zone the batture. Rather, what we are being asked to decide is whether the Parish acted arbitrarily and capriciously in refusing to rezone to the requested M-2 classification.
We note that there was conflicting testimony throughout the record concerning the right to fleet barges under either M-1 or M-2. Nevertheless, the majority of the experts agreed that barge fleeting would have been allowed in M-1 and in M-2. Maynard chose to apply for an M-2 *761 zoning classification. We express no opinion on why he made this choice.[4] Instead, our review of the Jefferson Parish Council's actions is limited to their denial of the requested M-2 classification. There is a question as to whether it is within the Council's prerogative to re-zone to a more restrictive zoning classification when an applicant has requested one which would be inappropriate. On this point, we note that the record indicates M-2 was the only zoning classification currently existing in the Comprehensive Zoning Ordinance that was suitable to Maynard.[5] Additionally, Ed Durabb, a member of the Jefferson Parish Planning Department, testified that the Jefferson Parish Council was acting solely on Maynard's petition and it had no reason to consider granting M-1 (or any other classification) instead of M-2. Neither Mr. Maynard nor anyone acting on his behalf asked the Council to consider a more restrictive zoning classification than M-2. It seems that now on appeal Maynard is arguing for the first time that the Jefferson Parish Council did not have to consider M-2 as the only possible classification, and the Parish is simply trying to restrict the issue to the reasonableness of M-2. However, during oral argument counsel for Maynard specifically stated that M-2 was still the only zoning classification suitable for Maynard's needs. Thus, we clarify again that our inquiry is limited to the reasonableness of the Council's decision not to re-zone to M-2.
M-2 is a broad zoning classification, allowing for a number of intense industrial uses. These uses would be particularly noxious to an adjoining neighborhood separated only by a levee. Included as permitted uses in M-2 are activities such as acid and ammonia manufacture, fertilizer manufacture, wholesale storage of gasoline, slaughtering of animals, rock crushing, and the processing or bulk storage of flammable and combustible liquids. We recognize that at no time has Maynard ever expressed any interest in conducting any of the above-listed activities on the Batture. Nevertheless, if the Batture were indeed re-zoned to M-2 then Maynard would have the absolute right to engage in these activities, as would any successor-in-interest to Maynard.
As stated above, Ed Durabb was a member of the Jefferson Parish Planning Department at the time Maynard applied for the zoning change in 1993. The Planning Department prepared a zoning report regarding Maynard's petition to reclassify the property from R-1A to M-2. The Jefferson Parish Planning Department Zoning Report found that the land uses permitted in the M-2 industrial zoning classifications are incompatible with nearby residential land uses. The Planning Department recommended to the Jefferson Parish Council that Maynard's application be denied. However, they did recommend that a study be done to analyze ways to regulate the Batture to allow reasonable uses thereof, while mitigating or eliminating adverse effects of development on the neighborhood residential areas.[6]
Two of the main reasons for the Planning Department's recommended denial were the proximity of the residential neighborhood, and the lack of access via a *762 river road to the Batture. Mr. Durabb testified that in his experience some of the worst land use conflicts occurred when heavy industrial land uses were placed adjacent to residential areas. Mr. Durabb further stated that although the Planning Department did not feel the R-1A district was necessarily the right zoning classification for the Batture, the Planning Department also did not feel that M-2 was the right classification either.
Dr. Anthony Mumphrey, accepted at trial as an expert in land use planning and zoning, was asked to review and analyze the Council's denial to re-zone the Batture M-2. Dr. Mumphrey opined that the denial was proper and appropriate, relying mostly on the following general zoning principals: the doctrine against spot zoning; the need for the proposed change; the distribution of benefits and costs associated with the proposed change; and any potentially noxious uses that would result from a change in the zoning classification.
Starting with spot zoning, the concern is singling out one landowner for preferential treatment. If the Parish started treating one landowner in this preferential way, there may be other landowners up and down the banks of the Mississippi River who could argue for the same kind of rezoning to make their property more valuable. As for the need to re-zone the Batture to M-2, Dr. Mumphrey noted that no argument was put forth by Mr. Maynard that there was a need for more M-2 property in Jefferson Parish.
Turning next to the distribution of the costs and benefits associated with a change in zoning, Dr. Mumphrey considered the effects of such a zoning change on the adjacent neighborhood. Dr. Mumphrey asserted that only Maynard would benefit from a re-zoning. On the other hand, many in the abutting subdivision would end up paying for having an M-2 zoned Batture right behind their houses. Due to the absence of a river road running along the levee, access to the Batture would be limited to the residential streets in the subdivision. There were numerous concerns voiced by the residents of the neighboring subdivision about the possibility of increased traffic and the possibility of having dangerous industrial activities being conducted so close to their homes. One particular example was the testimony of a resident that has witnessed people shooting at rabbits in the Batture area. Sometimes, the bullets go astray and hit the barges. Of course, there is the possibility that one of these bullets could hit a barge filled with fuel or any other combustible material. The result would be dangerous to both barge workers and nearby residents. Additionally, an M-2 classification would potentially mean increased noise, air pollution and noxious odors.

CONCLUSION
In conclusion, an appropriate question to consider is what exactly Maynard is entitled to. It is clear from the Universal Fleeting case that Maynard is legally entitled to fleet barges on the Batture, notwithstanding the residential zoning classification. However, Maynard is not entitled to a zoning change to M-2. Whether Maynard is entitled to something more than R-1A for his Batture is not before this Court. Zoning is a legislative function, not a judicial one. We express no opinion on whether the Batture should be re-zoned to B-1 or M-1. This is a question for the Jefferson Parish Council. It is not the prerogative of this Court to re-zone property where we feel the need to. We are constrained in our review to decide whether the Council abused its discretion in refusing to re-zone the Batture to M-2. Accordingly, we find that the Jefferson *763 Parish Council did not arbitrarily and capriciously deny Maynard's application to re-zone the Batture to an M-2 classification. The decision of trial court is affirmed, and any discussion of damages is pretermitted. All costs of this appeal are to be borne by the Appellant.
AFFIRMED.
NOTES
[1] Throughout this opinion, the Plaintiffs will be collectively referred to as Maynard.
[2] Apparently, batture lands are not usually suitable for residential homes because of the susceptibility to flooding. However, we note that the record reveals there are batture homes located at the Jefferson/Orleans Parish line.
[3] At trial, George Maynard's ownership of the Batture was questioned. This issue was not briefed, and we forgo any discussion thereof in this opinion.
[4] We note here that there was another classification available known as B-1. However, Maynard objected to B-1 because he felt it was too similar to R-1A.
[5] At a public hearing before the Jefferson Parish Council, Maynard's attorney indicated that M-2 was the only available zoning classification suitable for Maynard's needs.
[6] The outcome of this study was a proposal for an amended B-1 classification.