MARION F. EDWARDS, Judge.
Plaintiffs Randy and Pamela Boudreaux appeal a judgment of the 23rd Judicial District Court dismissing their petition against the defendants Braun Investments L.L.C., its principal owners Mary Rose Brown and Jerry L. Brown, the Town of Lutcher, Mayor Troas A. Poche, Mayor of Lutcher, and Dean Millet, Lutcher Planning and Zoning Commissioner. We affirm.
The conflict at issue is a dispute between the Boudreauxs, who reside in Acadia Subdivision in the Town of Lutcher, and the Browns, who purchased commercial property next to the Boudreaux residence, at 1870 Cabanose Avenue, and established a funeral home. The tract of land that ultimately developed into the Acadia Subdivision was previously owned by Industrial Cleanup Inc. (I.C.I.) and was annexed by ordinance by the Town of Lutcher in 1978.
On October 21, 2002, the Boudreauxs filed their Petition For Declaratory Judgment, Injunctive Relief and Writ of Mandamus, alleging that in 1992, they purchased Lots B, C, and D which land was immediately adjacent to a lot A. On Lot A was a building which formerly housed a Pelican Homestead Savings and 1.¡Loan Company. The Boudreauxs averred that prior to their purchase of the property in 1992, they were informed the entire tract of I.C.I. property, including Lot A, was zoned C-l, and that in order to put a residence on their property, the zoning would have to be changed to R-l. The Boudreauxs claimed that the lots were, in actual fact, already legally classified as R-1.
According to the petition, in January 1992, the Lutcher Board of Alderman, through Ordinance 92-04, “changed” the zoning on Lots B, C, and D to R-l. When the Boudreauxs completed their purchase of the property, the Act of Sale established a right of servitude of passage in their favor from the adjoining Lot A to Lot B. Thereafter, the Boudreauxs built their family residence on their property.
In 1999, the Boudreauxs learned that the defendants, the Browns, intended to purchase Lot A and the Homestead Building at 1870 Cabanose Avenue, and open a funeral home thereon. Pamela Boudreaux circulated a door-to-door petition with names of residents who opposed the placement of a funeral home on the property. The petition was taken to the Lutcher Board of Alderman at the May 24, 1999 meeting. In September 1999, the Browns purchased the building.
*183 On April 2, 2002, the Lutcher Board of Alderman passed Zoning Ordinance 02-02, and a new Zoning Map Ordinance No. 02-OS, depicting the Lot A property as being contained within a C-2 zoning district. The Browns applied for and received a building permit, and renovation work began to convert the Pelican Building to a funeral home. The Boudreauxs allege that at various times, the Browns have blocked the servitude on Lot A.
The Boudreauxs claim that the new ordinances were passed in the absence of proper notice to the public, and that the valid zoning classification for Lot A is C-l. They further urge that the appropriate zoning classification for a funeral home is C-2, and therefore the Rose Lynn Funeral Home was a prohibited use. According to the Boudreauxs, the zoning classification was unconstitutional 14because the new zoning map was created in violation of constitutional and statutory prerequisite procedural and jurisdictional requirements. It is alleged that adequate and timely notice was not given to the public; constitutional and statutory procedures were not followed; the classification of Lot A on the new zoning map constitutes illegal “spot” or “piece-meal” zoning and was unreasonable, arbitrary and discriminatory; and the ordinance was based on misrepresented and erroneous information.
The Boudreauxs allege that the defendants, including the Town of Lutcher, through Mayor Poche and Mr. Millet, violated the laws by: (1) allowing renovation work to be done on the former Pelican Homestead building in the absence of the issuance of a valid building permit; (2) approving an application for a building permit in violation of the zoning ordinances; failing to visibly display any building permit, in violation of the zoning ordinances; (4) failing to issue and/or approve a Certificate of Zoning Compliance.
They sought a declaratory judgment to declare that Lot A is zoned C-l; that April 2, 2002 Lutcher Zoning Ordinance, # 02-02, is unconstitutional, null and void; that the intended use of the property as a funeral home is in violation to the zoning ordinances; and that any certificate of zoning compliance be declared null and void. They sought to enjoin the Browns from operating a funeral home, and from hindering their servitude of passage, and petitioned the court to enjoin the Town of Lutcher defendants from issuing any certificate of zoning compliance to the Browns. The Boudreauxs sought a Writ of Mandamus ordering the Town of Lutcher to vacate the building permit issued to the Browns, to correct any violations of the zoning laws with respect to the property in question, to vacate any Certificate of Zoning Compliance that may have issued to the Browns, and to change the zoning map to show Lot A as being zoned C-l.
| sThe hearing on the Boudreaux petition was held May 29, 2003. At the hearing, Patricia Lemoine testified that she is the town clerk for the Town of Lutcher. She is the custodian of the town records, attends all the Board of Alderman meetings, and it is her responsibility to place notices in the official journal. The property at issue was formerly owned by I.C.I. Property and the building had been an office for Pelican Homestead. No funeral home had previously been operated at that location. A Notice of Public Hearing was published on March 14, 21, and 28, 2002, announcing a hearing set for April 2, 2002, to receive public comments on the proposed amendments to the zoning map Ordinance No. 02-03. The announcement declared that the public would have three days after the meeting, or until April 5, to submit written comments. No comments were received, either prior to or after the public meeting. Immediately after the *184 public hearing was adjourned, on April 2, the Board of Alderman held its meeting and adopted the new map. Mrs. Bou-dreaux had contacted her several times about the prospect of funeral home on Lot A. In 1999, Mrs. Boudreaux had attended a public meeting and discussed her petition about the funeral home, but did not submit it at that time. Ms. Lemoine received complaints from the Boudreauxs about work having begun on the building prior to the issuance of a building permit, at which time she contacted the Browns and told them to stop construction until the building permit was issued. The permit was in fact issued to the Browns in August, 2002, after which Mrs. Boudreaux complained that the permit was not posted in a visible place. A zoning compliance certificate was issued on February 18, 2003, at which time the building had been completed. According to the old town zoning map, the property in question had previously been zoned C-2.
Mrs. Boudreaux testified that in 1992, Mayor Poche told her that the property she wished to buy was part of a larger tract owned by I.C.I., and was 16zoned C-l. The Boudreauxs were able to have the property re-subdivided, and Lots B, C, and D were re-zoned R-l. In May 1999, as soon as she heard of the possibility that a funeral home would be placed, Mrs. Bou-dreaux circulated a petition and requested a public meeting, which was held in May, 1999. After the meeting, she called many times to request information on whether the funeral home would be built, and she was told they would let her know. She did not find out about the April 2 meeting until about April 13.
Work on the funeral home began in July, 2002, prior to the date a building permit issued, and Mrs. Boudreaux never saw a visible copy posted on the building. There was no problem living next door to the Pelican Homestead, but a funeral home would disrupt their lifestyle, as they have a swimming pool and enjoy barbecues in their back yard. The Boudreaux family enjoys music outside, but the funeral home patrons become offended. On numerous occasions, cars at the funeral home have blocked the right-of-way servitude to the Boudreaux property. The family uses the rear entrance to go to the back of the lot to cut grass or sometimes put their cars under the trees. Nevertheless, she has always been able to drive down Cabanose St. unimpeded.
Huey Stein editor of the News Examiner in Lutcher, testified that he ran an article in September 2002 of a second petition being circulated by the Boudreauxs in opposition to the funeral home. On contacting Mayor Poche for comment, the mayor told him that the I.C.I. property had been zoned C-l, the Boudreaux property had formerly been zoned C-2, and that the council reluctantly reclassified it to R-l.
Robber Dolese, an expert in zoning and planning matters, opined that the meeting notice was properly published. However, from a zoning standpoint, it would have been appropriate to recess the hearing and continue it after the expiration of the three day period. It was not proper to adopt the map and |7ordinance on the day of the meeting. Usually, someone can have an R-l use, a home, on C-l property. Responding to the court’s inquiry, Mr. Dolese agreed that property zoned C-l next to C-2 does not usually pose a problem, or affect the purpose of the zoning. However, changing C-l to C-2 opens the door for a number of uses that may be objectionable to adjacent residential property, and there should be a buffer. In 1979, the I.C.I. property was annexed to the Town of Lutcher and zoned R-l. In November 1979, Lutcher passed a resolution to *185 change that zoning, according to the witness, to C-l, but such a change required adoption of an ordinance. Permitting operation of the funeral home introduces a heavy commercial type use into a subdivision, and is not a compatible use. In his opinion, a funeral home is not the proper use of the land, irrespective of the zoning on that lot. Mr. Dolese agreed that such a zoning classification decision was at the discretion of the public officials. The only problem with the ordinances at issue was the failure of the council to wait three days to get written comments before adopting them. He also agreed that if the council had received any written comments after adopting the ordinances, another public hearing could have been held to make changes.
The deposition of Jason Amato, formerly an alderman of the Town of Lutcher, was admitted into evidence. He voted to approve the new zoning map, putting Lot A in a C-2 district, because in looking at an old “colorized” map that hung in the council chambers, he believed the property had previously been zoned C-2. Further, there was “a verbal agreement” that the zoning on that lot was not actually being changed. During the meeting, a question arose about the zoning, and he was assured that the C-2 classification was not a change. He believed the lot had always been C-2. Had he been aware of the actual zoning, he would have voted to table a reclassification because he was aware of the questions and objections of the Boudreauxs. On cross-examination, Mr. Amato was shown a | scopy of a resolution dated in September of 1980, designating the subject property as being zoned C-2.
Following presentation of the plaintiffs’ case, the defendants moved for a dismissal. The court granted the injunction, prohibiting any of the defendants from blocking or otherwise interfering with the servitude right-of-way in favor of the Boudreauxs. The court dismissed the remainder of the case, including the writ of mandamus, finding that the public officials complied with the law. It was determined that the Bou-dreauxs had not come forward with any evidence to show that Ordinance 02-02 or 02-03 were improperly enacted, as no written comments were submitted. The court found no showing of irreparable harm.
The Boudreauxs contend that the court erred in failing to hold the hearing on the preliminary injunction and writ of mandamus within the ten day period mandated in La. C.C.P. arts. 3602 and 3782. The record shows that when the petition was filed in October, the hearing was originally set for December 2. The remedy at that time would have been to apply for writs to this court. Further, the hearing was continued on at least one occasion at the request of counsel for the Boudreauxs. This assignment of error is without merit.
It is urged that the court erred in finding that the Lutcher Zoning Map and Ordinance 02-02 were properly enacted. The Boudreauxs cite La. R.S. 33:4724 which requires, in pertinent part:
The legislative body of a municipality which has provided for a comprehensive zoning plan shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced and from time to time amended. No regulations or restrictions shall become effective until after a public hearing at which parties in interest have an opportunity to be heard. A public hearing in relation to the regulations may be held by the legislative body of a municipality which has provided for a comprehensive zoning plan. In such a case, notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the *186 municipality or, if there be none, in a paper of general circulation therein; at least fifteen days shall elapse between the first publication and the date of the hearing.
|9It is alleged that the published notices were deceptive and misleading because the Board of Alderman voted immediately after the meeting to adopt the ordinance, rather than waiting three days for written comments, and because no notice of the agenda for the meeting was published. The notice introduced into evidence read:
You are hereby notified of the following Public hearing of the Town of Lutcher Board of Alderman, to be held on Tuesday, April 2, 2002, at 6:30 p.m. at the Lutcher Town Hall, located at 2500 Louisiana Avenue, Lutcher, Louisiana. The purpose of the public hearing is to receive public comments on the proposed amendments to the Town of Lutcher Zoning Map, Ordinance No. 02-02.
A copy of the proposed map is available for public inspection at the Lutcher Town Hall during normal working hours, Monday through Friday, from 7:30 a.m. to 4:00 p.m.
Written comments will be considered if submitted no later than three working days after the close of the public hearing (4:00 p.m.) on April 5, 2002). Written comments should be addressed to Town of Lutcher, P.O. Box 456, Lutcher, LA 70071.
Zoning laws are in derogation of the rights of private ownership.[1] As a result, our courts have consistently required strict compliance with the statutory procedures regulating enactment of zoning laws. Failure to comply with such procedures is fatal to the validity of the zoning ordinance.[2] R.S. 33:4724 and the Lutcher Zoning Plan require a public hearing be held prior to adoption or amendment of zoning regulations, and the meeting duly noticed. There is no requirement to hold open adoption of the amendments for three days, and we do not find that the notice so implies. Further, there was evidence at the trial that receipt of any such comments in the three day period could have brought the matter back before the board. Finally, there were no written comments or objections within the time frame allowed. Strict compliance with the zoning laws did not require the Town of Lutcher to wait until the three day period had passed | inbefore adopting the ordinances. The Town complied with the statutory law requiring notice and the opportunity for a public hearing.
The Boudreauxs argue that the 1979 zoning change of the I.C.I. property from R-l to C-l was null because it was adopted by resolution rather than by ordinance. Section 407(e) of the 1977 zoning ordinance stated that “All vacant territory which may hereafter be annexed to the town shall be considered to be in the R-l Single Family residential District until otherwise classified.” However, according to Section 314 of the Lutcher Comprehensive Zoning Plan, that plan may be amended, supplemented, changed or appealed upon notice to the public and after a public hearing is held on the issue. In this instance, the I.C.I. property annexation was the subject of an ordinance and a public hearing was advertised and held, accomplishing the annexation without protest. A resolution was immediately offered and adopted “to amend the Official Zoning Map of the Town of Lutcher concerning the new annexation to Commercial zone 1. *187 All new property being annexed is zoned Residential 1.” The resolution declared that the Lutcher Zoning Commission had conducted a public hearing on the reclassification of the I.C.I. property from R-l to C-l, and recommended that re-zoning. The Mayor and Board approved the change and the Mayor was authorized to make the entry on the Town Map. Section 403 of the Zoning Plan provides for such changes to be made on the official zoning map. The Board approved the amendment.
Regarding the 1987 map which the Boudreauxs also claim was .null because adopted by resolution, Section 405 of the Lutcher Zoning Plan provides that in the event the Official Zoning Map becomes damaged, destroyed, lost or difficult to interpret because of the nature and number of changes and additions, the Town Council may by resolution adopt a new Official Zoning Map. Since, according to the 1987 resolution, the previous map was destroyed by fire, the Council properly In adopted the 1987 zoning map. We find that in these instances, the Town acted in accordance with its own legislative regulation as well as statutory requirements.
We note that the 1980 resolution which purported to re-zone the parcel C-2 was the result of a recommendation by the Planning Commission; however, we are unable to determine whether a public hearing on the matter took place. In any case, the issues for our consideration are whether Lutcher Ordinances 02-02 and 02-03 were properly enacted, whatever the prior zoning.
 Zoning ordinances are presumed to be valid, and parties attacking their validity have the burden of proof.[3] Specifically, the exercise of the governing body’s police power to deny an amendment of these zoning regulations will be upheld unless it is shown that there has been an abuse of discretion or excessive use of power, or that the action taken was arbitrary or unreasonable or that it bears no relation to the health, safety, or general welfare of the public.[4]
The Louisiana Supreme Court has held that a challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the existing zoning legislation is arbitrary and capricious.[5] The Court went on to explain that reviewing courts cannot substitute their judgment for that of the legislative authority. A landowner challenging an existing zoning classification must show that it bears no relation to health, safety or the public’s general welfare, such that the classification is arbitrary and capricious.[6]
At trial, the Boudreauxs failed to show that the adoption of the ordinances was arbitrary or unreasonable, or bore no relation to the health, safety, or general welfare of the public. The evidence showed that the I.C.I. tract of land was | ^originally a large parcel of undeveloped property, which was zoned for commercial use prior to the Boudreauxs purchase of Lots B, C, and D. They built their resi *188 dence next to a large commercial building, the Pelican Homestead, an established business. Later, the Browns established a funeral home on the adjacent property. It is true that the Boudreauxs were inconvenienced by having access to their servitude impinged upon, a fact which the trial court corrected in its partial injunction.
At trial, there were copies submitted of the petition to prevent the use of the property as a funeral home, but the document contained only the names of the complainants, and not the reasons for their objections. The only other evidence produced was the testimony of Mrs. Boudreaux to the effect that she did not wish to live next door to a funeral home. She testified that she could not enjoy an outdoor barbecue, and that people get upset (presumably during funeral services) when she plays music outdoors. She does not think she will be able to sell the property in back of her home because no one would want to pass through the parking lot. Although we understand the problem, we do not find the Boudreauxs carried their burden of proving that the council abused its discretion, or was arbitrary or unreasonable in rezoning the property, which is adjacent to a state highway, to C-2 commercial use.
Because we find that Ordinances 02-02 and 02-08 were properly adopted, the court appropriately denied the requested relief. It follows that the court was also correct in denying the Boudreauxs request for costs.
For the foregoing reasons, the judgment is affirmed. Appellants are taxed costs of this appeal.
AFFIRMED.

. Schmitt v. City of New Orleans, 461 So.2d 574 (La.App. 4 Cir.1984)

. Id.

. Southside Civic Ass’n, Inc. v. Guaranty Sav. Assur. Co., 339 So.2d 323 (La.1976).

. Terrytown Properties, Inc. v. Jefferson Parish, 416 So.2d 323 (La.App. 5 Cir.1982).

. Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990).

. Palermo, 561 So.2d at 493; Cerruti v. Parish of Jefferson, 94-608 (La.App. 5 Cir. 1/18/95), 650 So.2d 315; Maynard Batture Venture v. Parish of Jefferson, 00-1669 (La.App. 5 Cir. 4/11/01), 786 So.2d 757, writ denied 2001-1386 (La.6/29/01), 794 So.2d 815.