Dear Mr. Landry:
This office is in receipt of your request for an Attorney General's opinion concerning the following issues:
 (1) Whether a parish's installation of aggregate material, paid for by a private landowner and used to cover a culvert within a public right of way so as to connect a private road to a public thoroughfare, would violate the Constitution or any State statute?
 (2) Whether a parish may, by ordinance, regulate the siting of solid waste disposal and pick up facilities?
 (3) Whether a parish may entirely prohibit the location of any type of waste or storage facility within the parish pursuant to a valid comprehensive zoning ordinance?
With respect to your first question, your letter, attached resolution and copies of previously issued Attorney General Opinions indicate that the Parish Council of New Iberia ("the council") is experiencing problems with the haphazard installation of driveway culverts. This slapdash system has led to drainage problems and to potential traffic hazards in places throughout the parish. The council wants to install culverts and to cover them with aggregate material in the public right of way. By so doing, the council hopes to achieve proper and uniform installation of culverts, thereby alleviating drainage problems and avoiding flooding that could cause traffic hazards.
Under the proposed scenario, it is assumed that all costs would be borne in advance by the landowner. Those costs would include, but would not be limited to, the cost of the culvert, aggregate material and labor necessary for the installation. The council would assume responsibility for actually installing both the culvert and aggregate material used to cover the culvert. Work would only be performed in or on the public right-of-way.
In order to address your question, we refer you to La. Const. art. VII, § 14 (A) which provides, in pertinent part, as follows:
 Section 14 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
Paragraph (A) contains the general prohibition against the donation of public funds. The jurisprudence indicates that La. Const. art. VII, § 14 (A) is violated whenever the state or one of its political subdivisions seeks to give up something of value when it is under no obligation to do so. City of Port Allen v.Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983).
The legislature defines the powers of police juries. La. R.S. 33:1236 (2) (a) reads as follows:
 The police juries and other parish governing authorities shall have the following powers:
 * * *
 (2) (a) To regulate the proportion and direction, the making and repairing of the roads, bridges, causeways, dykes, dams, levees and highways when, in the opinion of the police jury, such work will further the best interests of the parish and parish road system;
It would seem that, based on this statute, the council has a substantial interest in ensuring that parish culverts are properly built and maintained. Thus, the council would be authorized to use public funds to install culverts on public property and may install culverts on private property for a public purpose, that is, to improve the drainage system of the parish. Atty. Gen. Op. 97-428.
There would be no expenditure of public funds in this instance. The council would be charging the private property owner for the culvert, the aggregate material and the labor involved in making the installation. The owner could always choose to purchase the materials and do the work himself subject to the council's inspection. In other words, the council would be furnishing and installing the culverts and aggregate material, but the property owner would still be paying for them. Thus, there would not appear to be a violation of La. Const. art. VII, § 14(A), since no one is donating either the culverts or the aggregate material or anything else of value and since the property owner is paying the fair market value of all costs associated with the project.
Your second question deals with the enforceability of a parish ordinance that regulates the siting of solid waste storage or disposal facilities. An environmental company wants to expand its facilities in Iberia Parish so as to create a pick up station for solid waste disposal. The Department of Environmental Quality (DEQ) has given its stamp of approval to this project, saying that the company does not need a state permit to construct a pick up station. The Iberia Parish Council has enacted a local ordinance that regulates the siting of the storage or disposal of solid waste in the parish. In particular, you ask whether Ordinance No. 15-83 (2) of the Iberia Parish Council, places restrictions on the siting of proposed pick up stations, and if so, is it legally valid.
Ordinance 15-83 reads, in pertinent part, as follows:
 Section 15-83. Areas Where Disposal is Prohibited
 No solid, industrial, hazardous and/or sewage waste or other waste shall be stored or disposed of in any of the following areas or sites:
 * * *
 (2) Any area within a one-mile radius of any house, mobile home, apartment, condominium, commercial structure or other structure used as a residence or business, unless the structure is located and used on the site where the waste is located and used on the site where the waste is stored or disposed of.
The "storage" or "disposal" of different types of waste seems to connote a permanency that is not applicable to "pick up" stations. Although waste left at any site for any amount of time could be considered "storage," it would appear that the language of Ordinance No. 15-83 makes reference to waste left at sites for longer periods of time than temporary drop off spots. Assuming this is so, there is no language in Ordinance No. 15-83 that mentions any prohibition against transportation or transfer facilities. Such language would seem to be necessary to ban pick up facilities from the proscribed areas in the Ordinance.
Notwithstanding the language of Ordinance No. 15-83, Ordinance No. 15-84 requires that a company must obtain a permit from the Iberia Parish Council before development of any waste site or facility begins. This language would appear to regulate the pick up facilities about which you inquire.
A parish governing authority may require a company to obtain a permit before development of a solid waste pick up station begins, as long as state law does not preempt the local regulation.
La. R.S. 33:4169.1 provides:
 A. The governing authority of every parish or municipality shall have the following powers:
 * * *
 (2) To grant permits, licenses, exclusive or nonexclusive franchises, or any combination thereof to garbage and trash collectors and disposers. Any exclusive franchise shall be granted only after advertising for bids, reception of bids, and awarding of the contract or contracts in accordance with the public bid laws of the state and other provisions of law.
Despite the language of La. R.S. 33:4169.1A(2), La. R.S.33:4169.1(G) limits the authority granted to parish governing authorities as follows:
 G. The power to permit or regulate solid waste collection, transportation, processing, recovery, and disposal, granted herein to parish and municipal governing authorities, shall not preempt regulatory and licensing authority of the Environmental Control Commission and the office of environmental affairs, Department of Natural Resources, pursuant to R.S. 30:2001, et seq. La. R.S. 33:4169.1.
In Palermo Land Co., Inc. v. Planning Commission ofCalcasieu Parish, 561 So.2d 482, 497 (La. 1990), the Court listed factors to be used in determining whether state law had preempted a local ordinance:
 Local power is not preempted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating preemption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program.
No state statute preempts a parish governing authority from requiring a company to obtain a permit before development of a solid waste pick up facility begins. As stated above, the Department of Environmental Quality has determined that a company that wants to construct a solid waste pick up facility does not need a state permit. In other words, the state's regulation of solid waste pick up facilities cannot be said to be pervasive. Moreover, local permitting would not seem to run afoul of the state regulatory scheme. Thus, it is the opinion of this office that even though Ordinance 15-83 cannot be used to prohibit solid waste pick up stations in designated areas, Iberia Parish can require companies that seek to construct such pick up stations to obtain permits pursuant to Ordinance 15-84.
Your final inquiry concerns whether a parish may entirely prohibit the location of any type of waste or storage facility within the parish pursuant to a valid comprehensive zoning ordinance. Iberia Parish is a home rule charter parish, and as such, is granted ". . . the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with the constitution." La. Const. art. VI § 5 (E).
Local power is not preempted unless there is an express provision mandating preemption. Presumably, your prohibition would apply to facilities used for disposing of non-hazardous oilfield waste and injection wells. Regulation of the disposal of such waste has been vested by the legislature in the Commissioner of Conservation. La. R.S. 30:4(B). Therefore, it is the opinion of this office that, even with a comprehensive zoning ordinance, a parish may not entirely prohibit the location in the parish of certain types of waste or storage facilities.
We hope that this sufficiently answers your inquiries, but if we can be of further assistance, please do not hesitate to contact us.
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: CHRISTOPHER D. MATCHETT Assistant Attorney General